Larry HILL and Karen Hill Plaintiffs,

v.

IMPERIAL SAVINGS, Coldwell Banker,
and Richard Allen Smith Company, a
Texas Corporation, Defendants.

No. A–91–CA–780.

United States District Court,
W.D. Texas,
Austin Division.

Nov. 24, 1992.

Final Judgment Dec. 21, 1992.

William F. Turman, William F. Turman, P.C., Austin, TX, for Larry Hill and Karen Hill.

Jay B. Goss, Bryan, TX, Kyle Hawthorne, Bruchez, Goss, Thornton, Meronoff, Michel & Hawthorne, P.C., Bryan, TX, for Richard Smith Co.

Richard E. Kammerman, Kammerman & Sakoncheik, Austin, TX, Adam I. Hauser, Brown McCarroll & Oaks Hartline, Austin, TX, Darlene Byrne, Travis County Attys. Office, Austin, TX, for Resolution Trust Corp./Imperial Federal Sav. Ass'n, Coldwell Banker.

### MEMORANDUM OPINION ON RECEIVER'S MOTION FOR SUMMARY JUDGMENT

CAPELLE, United States Magistrate Judge.

Before the Court is the Motion for Summary Judgment filed by Defendant Resolution Trust Corporation as Receiver for Imperial Federal Savings Association ("Receiver") filed on July 6, 1992 (Clerk's Doc. # 45). The Plaintiffs filed a Response thereto on August 31, 1992. The Receiver filed its Reply, Objection to Plaintiff's Evidence, and Supplement to Receiver's Motion, and Brief in Support thereof on September 17, 1992.

The Court held a hearing on this Motion and on other pending motions on October 5, 1992.

### I. THE RECEIVER'S MOTION FOR PARTIAL SUMMARY JUDGMENT

In the Motion and Supplemental Motion at hand, the Receiver requests the Court to deny the Plaintiff's claims asserted in its Second Amended Complaint because:

1. Plaintiffs are not entitled to reformation of the contract to purchase the home or to breach of contract or negligent misrepresentation damages based upon alleged oral statements regarding the Property due to the prohibition of the same under 12 U.S.C. § 1823(e) and the *D'Oench, Duhme* doctrine.

2. Because the Plaintiffs have no breach of contract claim, they are not entitled to attorney's fees.

3. Alternatively, if the contract is enforceable against the Receiver (which Receiver denies), Plaintiffs are not entitled to any breach of contract damages based upon any alleged misrepresentations about the property because Plaintiffs waived such claims pursuant to specific provisions of the earnest money contract and the addendum thereto.

4. Alternatively, if the contract is enforceable against the Receiver (which Receiver denies), Plaintiffs are not entitled to specific performance to purchase the property, and they have other adequate remedies at law.

5. The Receiver is entitled to declaratory action to expunge the lis pendens which the Plaintiffs filed on the subject property and thereby quiet title thereto. Further, the Receiver is entitled to damages it has suffered due to the lis pendens clouding title to the property.

## II. THE COMPLAINT

### A. *The Plaintiffs' Claims.*

In their Complaint, the Plaintiffs allege causes of action related to the purchase of a home in Austin, Texas. In early 1991, Plaintiffs began negotiations with Defendants regarding the sale of the home. Defendant Richard Allen Smith Company was the real estate agent for Defendant Imperial Federal Savings and Loan Association. As a result of the negotiations, the parties entered into an escrow contract. Plaintiffs allege that the Defendants specifically represented certain material facts regarding the physical condition of the property, and Plaintiffs relied upon these facts as an inducement to purchase the home. Specifically, Plaintiffs allege that they relied on the representation that the home had 8,750 square feet, and that

the purchase price was derived by multiplying 8,750 times $85.00 per square foot. After the contract was signed, the Plaintiffs discovered that the square footage was less than 8,750 square feet and that approximately 1,200 square feet were contained in an illegal addition to the house and would have to be torn down due to the inadequacy of the septic field serving that large a home. Plaintiffs allege that at all times Defendants knew or should have known of the true square footage figure. Plaintiffs allege that they are fully able and ready to perform the contract at a figure of $85.00 times the correct, legal, and usable square footage of the home; and they request that the Court reform the contract to reflect such a price. Alternatively, Plaintiffs seek damages from Defendants in an amount equal to the difference between the true and the alleged misrepresented square footage times $85.00 per square foot, or to rescind the contract and receive their earnest money back. Further, Plaintiffs seek their attorney's fees.

### B. *The Receiver's Claims.*

In its First Amended Answer, the Receiver denies any liability to Plaintiffs. At the time of the negotiations in early 1991, the home was owned by the RTC acting as conservator for Imperial Federal Savings Association. After the execution of the earnest money contract and the addendum thereto on March 26, 1991, the RTC was appointed Receiver for Imperial on April 19, 1991 and became owner of the Property. Thus, the Receiver denies it made any misrepresentations to the Plaintiffs regarding the square footage of the Property or that the sales price was determined on a square footage basis. The Receiver denies that Plaintiffs relied on any such representations to their detriment because Plaintiffs have not purchased the Property. To the extent any misrepresentations were made regarding the square footage, they were made by Defendant Smith and/or its agent Tex Steeg without authorization to make such representations; therefore, the Receiver is entitled to contribution and indemnity from Smith to the extent the Plaintiffs may be awarded damages.

Receiver denies that this Court has jurisdiction to award the Plaintiffs non-monetary relief due to Financial Institutions Reform, Recovery, and Enforcement Act ("FIR-REA"), enacted in 1989, specifically 12 U.S.C. § 1821(j) which limits the remedial jurisdiction of the courts by prohibiting any "action" that would "restrain or affect" the RTC in performing its powers and functions as receiver for a failed institution. Further, the Receiver alleges that this Court lacks jurisdiction to award any monetary relief to the Plaintiffs due to their failure to comply with the administrative claims procedure of § 1821(d). This Court is to expunge the lis pendens under §§ 1821(d)(13)(c) and 1825(b)(2).

Receiver denies that Plaintiffs are entitled to: (1) reformation of the contract, (2) specific performance under Texas law because the Plaintiffs have failed to tender performance to purchase the Property, and they have other remedies of law, (3) breach of contract damages based on any alleged misrepresentations because the Plaintiffs waived the same pursuant to the contract, or (4) negligent misrepresentation damages based upon an oral statement regarding the Property due to the prohibition of the same by 12 U.S.C. § 1823(e) and the *D'Oench, Duhme* doctrine. Following this, the Receiver alleges that the Plaintiffs have no claim for attorney's fees.

Receiver requests declaratory relief to expunge the lis pendens and quiet title to the property. Further, Receiver requests the damages it incurred as the result of the cloud on the title caused by the Plaintiff's lis pendens making a sale to another buyer impossible.

## C. *Smith's Claims.*

In its First Amended Original Answer, Smith denies any liability in the capacity sued. Smith admits that negotiations to purchase the Property began in early 1991 but denies all of the Plaintiff's other allegations regarding the subject sales transaction. Smith asserts that it relied on government documents, such as the Travis County Appraisal District Records, regarding the square footage of the Property and that such reliance was reasonable and the usual customary practice in the real estate business. Smith asserts that the Plaintiffs were aware of the source of the square footage figure both before and after signing the contract and that they had access to information regarding the square footage at the time of the contract. Smith asserts that Plaintiffs have never purchased the Property and are, therefore, not entitled to damages. Further, Plaintiffs are estopped to allege that Smith made any misrepresentations as to the Property's square footage by the provisions of the contract which waive any claim for misrepresentations.

Smith asserts that Plaintiffs have failed to state a claim upon which recovery can be had against Smith for specific performance, recision, reformation and attorney's fees. Smith seeks a declaratory judgment that Plaintiffs are not entitled to these remedies because Smith does not own the Property and Smith is not a party to the contract.

Smith denies the Receiver's cross-claim and asserts that the Receiver is contributorily negligent in that it failed to exercise ordinary care, caution or prudence in providing accurate information regarding the Property and failed to communicate to Smith any inaccuracies in the information published about the Property. Smith denies it is liable to indemnify Receiver and asserts that to any extent it may be held liable, it is entitled to contribution from Receiver.

Smith filed a Motion to Dismiss under Rule 12(b) in which it requests dismissal of Plaintiffs' requests for specific performance, rescission, reformation, and for the recovery of attorney's fees against Smith. The Plaintiffs have agreed, via their attorney of record's announcement at the hearing on this Motion, to dismiss all claims against Smith except for their claim of damages. Also in this Motion, Smith requests that the Court dismiss the Receiver's cross-claim for indemnity against Smith. At the hearing on this Motion, the Receiver agreed to dismiss this cross-claim but retain its claim for contribution from Smith should the Plaintiffs be awarded damages from the Receiver.

## III. MATERIAL FACTS NOT IN GENUINE DISPUTE

From a review of the pleadings on file in this cause, the Magistrate Court finds that the following material facts are not in genuine dispute:

1. Plaintiff's negotiations regarding the purchase of a home located at 4709 Rock Cliff Road in Austin, Texas (the "Property") began in early 1991.

2. The Richard Allen Smith Company d/b/a Coldwell Banker Richard Smith, Realtors was the listing agent for the RTC, conservator for Imperial Federal Savings, at the time of the Plaintiff's negotiations to purchase the Property up to and including March 26, 1991, when the purchase contract was signed.

3. Tex Steeg, a broker with Smith, was the listing agent for the Property.

4. The Plaintiffs submitted an undated earnest money contract ("EMC") on a form contract of the Austin Board of REALTORS to the seller, listed as Imperial Savings Association, to purchase the Property for $750,000.00.

5. An Addendum, dated March 26, 1991, which refers to the EMC and forms a part thereof, is signed by the seller, Resolution Trust Corporation, as conservator for Imperial Federal Savings Association, and by the Plaintiffs ("Addendum 1").

6. The Addendum states that in the event of an inconsistency between the provisions of the EMC and the terms of the Addendum, the terms of the Addendum control and govern the rights, duties and obligations of Seller and Buyer.

7. By means of a second Addendum, which is undated and only signed by the RTC but not by the Plaintiffs, the closing date for the transaction was extended to May 31, 1991 ("Addendum 2") [hereinafter the EMC, Addendum 1, and Addendum 2 will be collectively referred to as the "Contract").

8. The Plaintiffs tendered $25,000.00 as earnest money to the Escrow Agent.

9. The Plaintiffs filed this suit in the 261th District Court of Travis County, Texas, Cause No. 91–6893 on May 17, 1991.

10. The Plaintiffs filed a lis pendens notice on May 17, 1991 in the Real Property Records of Travis County, Texas (the "Lis Pendens").

11. The Receiver removed this suit to federal court on October 2, 1991.

12. The parties agree that no reference is made to a price per square foot of the Property in the Contract.

13. The Plaintiffs admit that there is no reference in the Contract to square footage of the Property.

14. The Plaintiffs admit that they do not own the Property.

15. The Plaintiffs admit that they never obtained financing to purchase the Property.

16. The Plaintiffs admit that they never tendered money to the Receiver to purchase the Property.

17. Plaintiffs admit that no contract to purchase the Property existed between Smith and Plaintiffs.

18. The Plaintiffs admit that they never spoke with an employee of the RTC regarding the purchase of the Property.

19. The Plaintiffs admit that they never spoke with an employee of Smith on or before March 26, 1991.

20. The parties stipulate that on February 22, 1990, the Office of Thrift Supervision ("OTS") by Order No. 90–375 appointed the RTC as conservator of Imperial Savings Association.

21. The parties stipulate that on June 22, 1990, the OTS, by Order No. 90–1193, appointed the RTC as receiver of Imperial Savings Association. By Order No. 90–1194, OTS formed Imperial Federal Savings Association and appointed RTC as conservator for Imperial Federal. The new association purchased substantially all of the assets of Imperial Savings Association, including the deed of trust lien on the Property and the underlying note.

22. The parties stipulate that the RTC, as conservator of Imperial Federal, owned the Property as of June 25, 1990.

23. The parties stipulate that on April 19, 1991, the OTS, by Order No. 91–214, appointed the RTC as receiver for Imperial Federal. On April 19, 1991, the Receiver became the owner and holder of the Property.

24. In September 1990, Smith retrieved information from the Travis County Appraisal District regarding the square footage of the Property.

25. TCAD refers to Travis County Appraisal District.

26. Smith listed the Property in marketing advertisements and brochures.

27. In all but one ad, the square footage was listed as being 8750 square feet, with the designation of "TCAD" next to the 8750 figure. These advertisements included an ad placed in Unique Homes magazine which listed the Property as having "some 8750 square feet" and a Coldwell Banker marketing brochure which listed the footage as "Approximately 8750 square feet (TCAD)."

28. Tex Steeg or Smith sent copies of the advertisements to the RTC.

29. Gloria Norton, a realtor with Henry S. Miller Realtors of Austin, represented the Plaintiffs as their agent.

30. Tex Steeg was not acting as agent for the Plaintiffs.

31. Gloria Norton provided the Plaintiffs with a form promulgated by the Texas Real Estate Commission which sets forth the duties and obligations of the listing and selling broker to the owner of a property.

32. The Plaintiffs saw the advertisement for the Property in Unique Homes and later toured the Property with Gloria Norton.

33. On their first visit to the Property, the Plaintiffs obtained a brochure on the Property which listed the square footage as "8750 square feet (TCAD)."

34. The Plaintiff Larry Hill did not read the back page of the brochure on the Property where it states "The information contained herein is furnished by the owner to the best of his knowledge, but is subject to verification by the purchaser, and agent assumes no responsibility for correctness thereof. The sale offering is made subject to errors, omissions, change of price, prior sale or withdrawal without notice. In accordance with the law, this property is offered without regard to race, color, creed or national origin."

35. The Plaintiffs visited the Property approximately three to five times before submitting the EMC.

36. Tex Steeg was not at the Property when the Plaintiffs visited it.

37. Gloria Norton, agent for the Plaintiffs, advised them to read the Contract before signing it.

38. After March 26, 1992, the TCAD records were changed to show the Property's square footage as 7823 square feet.

39. The Plaintiffs did not have any surveys or appraisals done on the Property on their behalf.

40. The Plaintiffs made no independent verification of the square footage of the Property.

41. The Plaintiffs did not ask their real estate agent to verify the square footage of the Property.

42. Prior to the Plaintiff's submission of the EMC, the Plaintiffs have no knowledge or any evidence that Tex Steeg or anyone associated with the Richard Allen Smith Company knew anything about the actual square footage of the Property.

43. The Plaintiffs did not personally meet with anyone from the Richard Allen Smith Company prior to signing the EMC.

44. Before the time of the submission of the EMC, the Plaintiffs had not spoken with anyone at the RTC, at First Financial Equities, the asset manager for the RTC, conservator for Imperial Federal at the time the Contract was executed, at Imperial Federal, or at Coldwell Banker.

45. The purchase price of the Property was not derived on a square foot basis.

46. There was never any statement made to the Plaintiffs or their agent, Gloria Norton, by Tex Steeg that First Financial Advisors, the RTC, or Imperial Federal would sell the Property at $85.00 per square foot.

47. The $750,000 purchase price for the Property was a sales price agreed upon by

the seller and the buyer and was not determined by multiplying $85.00 by the square footage of the Property.

48. The listing of the Property in the listing book maintained by Coldwell Banker dated September 12, 1990, reflects "8750 TCAD" as the square footage.

49. Coldwell Banker obtains their TCAD information from a computer service which accesses tax records.

50. After the Contract was approved, a problem was discovered with the septic system for the Property because the system was too small for the 8750 square feet of the improvements on the Property.

51. After discovery of the septic system problem, three prior appraisals of the Property were obtained and all three give differing numbers as the square footage of the Property, with all three being less than 8750 square feet.

52. According to Plaintiff Larry Hill, there is no longer any problem with the septic system in that it is a proper size for a home of approximately 7500 square feet (approximately the correct size of the Property); thus, the Travis County Health Department is no longer requiring the 1200 square foot addition alleged to be illegal to be torn down.

53. A letter dated May 29, 1991 from the attorney for the Plaintiffs to Tex Steeg is the first indication to Mr. Steeg that there was ever any discussions about pricing the Property on a square foot basis.

54. Prior to signing the EMC, the Plaintiffs assert that they relied on the Unique Homes advertisement, the brochure prepared by the Richard Smith Company, and a square footage comparison sheet (which has not been entered into evidence but which allegedly compared the Property to other homes on a cost per square foot basis), and some type of computer printout which contained the foreclosure history of the Property and descriptions of the Property's features. The computer printout also contained the notation "TCAD" beside the square footage figure.

55. Paragraph 7 of the Contract (in Addendum 1) provides

Buyer hereby acknowledges and agrees that neither Seller, nor anyone acting for or on behalf of Seller makes or has made any representations, warranties, or promises to Buyer concerning title to the Property, encumbrances affecting the Property, the physical aspects or condition of the Property, the presence of hazardous substances or vapors, the condition of the soil of the Property or any other aspect or condition of the Property, and that by entering into the Contract, Buyer has not relied on any representation, statement, or warranty of Seller, or anyone acting for or on behalf of Seller, all matters concerning the Property to be independently verified by Buyer. Buyer agrees to take the Property "AS IS". Section 19 of the Contract is hereby deleted in its entirety.

56. Paragraph 8 of the Contract (in Addendum 1) provides

BUYER HEREBY WAIVES, AND SELLER HEREBY DISCLAIMS, ALL WARRANTIES OF ANY TYPE WHATSOEVER WITH RESPECT TO THE PROPERTY, EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

57. Paragraph 20 of the Contract provides

This contract contains the entire agreement of the parties and cannot be changed except by their written agreement.

58. The EMC provides in Paragraph 16, that

If Buyer fails to comply herewith, Seller may either (a) enforce specific performance and seek such other relief as may be provided by law or (b) terminate this contract and receive the Earnest Money as liquidated damages. If Seller is unable without fault, within the time herein required, to (a) make any non-casualty repairs or (b) deliver the Commitment or (c) deliver the Complete Abstract, Buyer may either terminate this contract and receive the Earnest Money as the sole remedy or extend the time for performance up to fifteen (15) days and the Closing Date shall

be extended pursuant to other provisions of this contract. If Seller fails to comply herewith for any other reason, Buyer may either (a) enforce specific performance hereof and seek such other relief as may be provided by law or (b) terminate this contract and receive the Earnest Money, thereby releasing Seller from this contract.

59. Paragraph 9 of the Contract (in Addendum 1) provides

Buyer acknowledges that Seller, by entering into this Contract, is incurring legal obligations with respect to the Property. Buyer further acknowledges that Seller would not enter into the Contract unless Buyer deposited the earnest money referenced herein to secure timely performance under the Contract. Accordingly, if Buyer fails to complete the acquisition of the Property as provided under the Contract for any reason other than as a result of a material default of Seller under the Contract, then Seller shall be released from any further obligations under the Contract and the following shall apply.

INSOFAR AS IT WOULD BE EXTREMELY IMPRACTICABLE AND DIFFICULT TO ESTIMATE THE DAMAGE AND HARM WHICH SELLER WOULD SUFFER IN THE EVENT BUYER DEFAULTS UNDER THE CONTRACT OR FAILS TO COMPLETE THE ACQUISITION UNDER THE CONTRACT, AND INSOFAR AS A REASONABLE ESTIMATE OF THE TOTAL NET DETRIMENT THAT SELLER WOULD SUFFER IN THE EVENT OF BUYER'S DEFAULT AND FAILURE TO DULY COMPLETE THE ACQUISITION UNDER THE CONTRACT IS THE SUM OF $25,000 DEPOSITED BY BUYER AS EARNEST MONEY, AND ALL INTEREST EARNED THEREON, SAID SUM SHALL BE DELIVERED BY THE HOLDER THEREOF TO SELLER AS LIQUIDATED DAMAGES UPON SELLER FURNISHING TO SUCH HOLDER A STATEMENT THAT BUYER HAS FAILED TO CLOSE THE TRANSACTION IN ACCORDANCE WITH THE TERMS OF THE CONTRACT. FAIL-URE OF BUYER TO DEPOSIT ANY SUCH FUNDS OR THE FAILURE OF SUCH HOLDER TO DELIVER ANY SUCH FUNDS TO SELLER FOR ANY REASON SHALL NOT IN ANY WAY AFFECT SELLER'S RIGHTS TO RECEIVE SUCH AMOUNTS AS LIQUIDATED DAMAGES.

60. The Plaintiffs are requesting as damages their attorney's fees, and if they cannot purchase the property, the loss of their bargain, calculated as the sales price based upon the Property's square feet as it was represented to them and the actual value derived by the correct square feet of the Property.

61. The Receiver has offered to return the Plaintiff's earnest money to them, which the Plaintiffs apparently refused.

62. The Receiver did not know at the time of placing the advertisement and distributing the brochure stating that the Property contained 8750 square feet that this information was false.

63. Smith did not know at the time of placing the advertisements and distributing the brochures stating that the Property contained 8750 square feet that this information was false.

64. The Receiver did not make a false, material representation about the square feet of the Property.

65. Smith did not make a false, material representation about the square feet of the Property.

66. The Receiver did not make any material representation of square footage recklessly without any knowledge of its truth or positive assertion.

67. Smith did not make any material representation of square footage recklessly without any knowledge of its truth or positive assertion.

68. The Receiver did not make any material representation of square footage with the intent that it be acted upon by the Plaintiffs.

69. Smith did not make any material representation of square footage with the intent that it be acted upon by the Plaintiffs.

70. The Plaintiffs did not act in reliance upon any material representation of square footage of the Property by Smith.

71. The Plaintiffs did not act in reliance upon any material representation of square footage of the Property by the Receiver.

72. The Plaintiffs have not suffered any injuries from any representation made about the square footage of the Property.

73. After discovery that the Property has less square footage than listed by TCAD, the Plaintiffs attempted to renegotiate the purchase price of the Property, with the price to be $85.00 times the correct amount of square feet.

74. After execution of the Contract, no representation was made to the Plaintiffs by the RTC, acting as conservator for Imperial Federal, First Financial Equities, Steeg, Smith, or the Receiver that the Property would be sold on a price per square foot basis.

75. The RTC, acting through Sue Reindel, an employee of First Financial Equities, declined the counteroffer of the Plaintiffs of a price of $85.00 times the correct size.

76. During the extended closing period (extended by Addendum 2 until May 31, 1991), the Plaintiffs filed this lawsuit and the Lis Pendens.

77. The Plaintiffs have not filed a claim with the Receiver for a determination of their claims asserted here pursuant to the administrative claims procedure of 12 U.S.C. § 1821(d)(3)–(13).

78. During this alleged renegotiation period, the RTC as Receiver became the owner of the Property on April 19, 1992.

79. Due to conflicting evidence, the square footage of the Property still cannot be readily determined.

80. As a result of the Lis Pendens, the Receiver's efforts to sell the Property have been hindered.

## IV. ANALYSIS

### A. *Standard of Review.*

Rule 56(c) of the Federal Rules of Civil Procedure provides for summary judgment "if the pleading, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show the moving party to be entitled to summary judgment as a matter of law." Rule 56(e) states: "When a motion for summary judgment is made and supported as provided in this rule an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but must set forth specific facts showing there is a genuine issue for trial." Even where there is no opposition, a motion for summary judgment cannot be granted simply because the non-movant has not responded, even if the failure to respond violates a local rule. *Hibernia Nat'l Bank v. Admin. Central Sociedad Anonima,* 776 F.2d 1277, 1279 (5th Cir.1985).

Both movants and non-movants bear burdens of proof in the summary judgment process. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The movant with the burden of proof at trial must establish every essential element of its claim or affirmative defense; however, if the issue is one on which the movant does not bear the burden of proof at trial, summary judgment is warranted if the non-movant fails to make a sufficient showing to establish the existence of each element essential to its case. *Id.* at 322–23, 106 S.Ct. at 2552. In so doing, the moving party without the burden of proof need only point to the absence of evidence on an essential element of the non-movant's claims or affirmative defenses. *Celotex,* 477 U.S. at 323–24, 106 S.Ct. at 2554. At that point, the burden shifts to the non-moving party to produce evidence in support of its claims or affirmative defenses by affidavits or by " 'depositions, answers to interrogatories and admissions on file,' [to] designate 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 324, 106 S.Ct. at 2553. The non-moving party must produce "specific facts" showing a genuine issue for trial, not mere general allegations. Fed. R.Civ.P. 56(e); *Gossett v. Du–Ra–Kel Corp.,* 569 F.2d 869, 872 (5th Cir.1978). The non-movant has failed to meet this standard if its response merely shows that "there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith*

*Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). If no such evidence is produced, "[t]he moving party is entitled to a judgment as a matter of law.'" *Id.,* 477 U.S. at 323, 106 S.Ct. at 2552.

In deciding whether to grant summary judgment, the court should view the evidence in the light most favorable to the party opposing summary judgment and indulge all reasonable inferences in favor of that party. *Int'l Shortstop, Inc. v. Rally's, Inc.,* 939 F.2d 1257, 1263 (5th Cir.1991), *cert. denied,* — U.S. ——, 112 S.Ct. 936, 117 L.Ed.2d 107 (1992); *Pharo v. Smith,* 621 F.2d 656, 664 (5th Cir.), *aff'd in part, remanded in part on other grounds,* 625 F.2d 1226 (5th Cir.1980); *Jacobs v. Provident Life & Accident Ins.,* 837 F.2d 213, 215 (5th Cir.1988).

The Court must substantively evaluate the evidence offered by the moving and nonmoving parties to determine whether the evidence raises a "material" fact question which is "genuine." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) A fact question is "material" if it involves "disputes over facts that might effect the outcome of the suit under the governing law." *Id.* at 248, 106 S.Ct. at 2510; *see also James By James v. Sadler,* 909 F.2d 834, 837 (5th Cir.1990); *Phillips Oil Co. v. OKC Corp.,* 812 F.2d 265, 272 (5th Cir.1987), *cert. denied,* 484 U.S. 851, 108 S.Ct. 152, 98 L.Ed.2d 107 (1987). Thus, the focus of the Court is upon disputes over material facts.

The material fact dispute must be "'genuine' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. at 2510. With all reasonable doubts resolved against the movant, the court only decides whether a factual dispute exists and does not resolve the controversy. *Jones v. W. Geophysical Co. of America,* 669 F.2d 280, 283 (5th Cir.1982), *aff'd in part, modified in part on other grounds,* 761 F.2d 1158 (1985).

**B.** *Receiver's claim of no entitlement to reformation.*

The Receiver asserts that the Plaintiffs are not entitled to reformation of the contract to purchase the home or to breach of contract or negligent misrepresentation damages based upon alleged oral statements regarding the Property due to the prohibition of same under 12 U.S.C. § 1823(e) and the federal common law doctrine set forth in the United States Supreme Court case of *D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942). The basis of the Plaintiffs' claims is Defendants' alleged oral misrepresentation regarding the square footage of the Property and a sales price allegedly derived therefrom of $85.00 per square foot times the square footage of the Property. However, no such price setting terms are found anywhere in the Contract.

In response, the Plaintiffs argue that 12 U.S.C. § 1823(e) and the *D'Oench, Duhme* doctrine do not apply here because that statute and doctrine deal with situations where the litigant had a deal with the lending institution before the federal agency, such as the RTC, acting as Receiver, took over. In other words, the Plaintiffs entered into a contract with the RTC as conservator and as receiver for Imperial Federal for the purchase of the Property, not a secret agreement with the predecessor banking entity which can later be avoided by the Receiver. In fact, the Plaintiffs argue that the only statutory authority which is applicable is found in Section 13(E) of FIRREA which requires the RTC to maximize return and minimize loss when acting as conservator or receiver and to "ensure adequate competition and fair and consistent treatment of offerers."

**a.** *The D'Oench, Duhme Doctrine.*

In the case of *D'Oench, Duhme,* the Supreme Court held that the maker of a promissory note payable to the order of a bank should be estopped from asserting that the parties had agreed that the instrument would not be enforced. The note was executed in order to deceive state regulators by falsely inflating the value of the bank's assets by allowing the bank to carry the note and not show past-due bonds on its books [bonds which the maker of the note had sold to the bank and which later defaulted]. Although not memorialized in the bank's records, the

parties agreed that the note would not be enforced. The bank later failed, and the FDIC sued to collect on the note. The borrower asserted that there was no consideration for the note based on the secret agreement with the failed bank. The Court determined that the borrower was estopped from asserting defenses based upon the oral agreement despite the fact that the maker did not know at the time of the execution of the note that it would later be used to deceive the FDIC because the FDIC was not then in existence—the Federal Reserve Act was not enacted until later.

The Court's decision was not based on a holder in due course theory but upon the federal policy of protecting the FDIC and the public funds which it administers from misrepresentations as to the assets in the portfolios of the banks which the FDIC insures or to which it makes loans. In order to fit within the *D'Oench, Duhme* doctrine, the elements are that: 1) the maker of a negotiable instrument or other debt makes himself a party to a secret scheme or arrangement; and 2) the secret scheme or arrangement can deceive or mislead the banking authorities.

b. *Purpose of the D'Oench, Duhme Doctrine.*

■ The *D'Oench, Duhme* doctrine has been explained as having dual purposes "to allow federal and state bank examiners to rely on a bank's records in evaluating the worth of the bank's assets" and "to ensure mature consideration of unusual loan transactions by senior bank officials, and prevent fraudulent insertion of new terms, with the collusion of bank employees, when a bank appears headed for failure." *Langley v. FDIC,* 484 U.S. 86, 91–92, 108 S.Ct. 396, 401, 98 L.Ed.2d 340 (1987). In that case, the debtors asserted as a defense to a suit on a debt that they signed the subject note and security documents based on the lender's representation of the amount of acreage and mineral interests being conveyed and which later proved incorrect. *Id.* at 87–90, 108 S.Ct. at 399–400. The Court held that "[a] condition to payment of a note, including the truth of an express warranty, is part of the 'agreement' to which the writing, approval,

and filing requirements of § 1823(e) attach." *Id.* at 96, 108 S.Ct. at 403. The Court adopted a broad construction of the term "agreement." Section 1823(e) applies despite the existence of fraud in the inducement, created by misrepresentations, or any knowledge which the FDIC may have of the misrepresentation. *Id.* at 92–94, 108 S.Ct. at 402. The Court affirmed the Fifth Circuit in sustaining its decision to grant the FDIC's motion for summary judgment. *Id.* at 94–96, 108 S.Ct. at 403.

Subsequent cases considering *Langley* and *D'Oench, Duhme* have held that oral arrangements made by a thrift are precluded by that doctrine. *FSLIC v. Lafayette Inv. Properties, Inc,* 855 F.2d 196 (5th Cir.1988) (borrower's defense based upon thrift's oral representation to him that his liability on note would end when loan documentation was completed was not a cognizable defense); *FSLIC v. Murray,* 853 F.2d 1251, 1255 (5th Cir.1988) (borrowers were precluded from asserting defense of thrift's factual misrepresentations that it would fund additional loans and release borrowers from liability by *Langley* and *D'Oench, Duhme* doctrine).

The *D'Oench, Duhme* holding was reached in the context of a borrower's defenses to the FDIC's suit upon a demand note; for this reason the language of *D'Oench, Duhme* pertains specifically to estoppel of asserted defenses. Recent decisions have applied the *D'Oench, Duhme* doctrine to claims and counterclaims asserted by borrowers and have held that to disallow the application of *D'Oench, Duhme* to such claims would be to thoroughly undermine the protection offered by it to the regulatory authorities.

> To allow a claim *against* the FDIC asserting the very grounds that could not be used as a defense to a claim *by* the FDIC is to let technicality stand in the way of principle. Moreover, the effect of such an approach would be to reduce actions Congress has allowed the FDIC to pursue to nullities since defendants could counterclaim and recover what they lost.

*Beighley v. FDIC,* 676 F.Supp. 130, 132 (N.D.Tex.1987), *reconsidered and aff'd,* 679 F.Supp. 625 (1988), *aff'd,* 868 F.2d 776 (5th Cir.1989).

"Allowing parties to apply in affirmative actions against the FDIC agreements Congress has specifically precluded them from using in defensive actions is to allow 'an end run around § 1823(e)'." *Beighley*, 679 F.Supp. at 627–28; *RSR Properties v. FDIC*, 706 F.Supp. 524, 531–32 & 531 n. 11 (W.D.Tex.1989).

c. *Expansion of the D'Oench, Duhme Doctrine.*

The *D'Oench, Duhme* doctrine has been expanded to estop the maker of a promissory note from asserting any defense arising out of a fraudulent scheme, even if the borrower did not intend to deceive the bank or the transaction was not fraudulent. *Beighley*, 868 F.2d at 782–84. In that case, the borrower sued the bank for its failure to finance a third party's purchase of property from the borrower as part of an overall financial settlement with the bank; the bank failed; the FDIC intervened and raised the borrower's debt obligation as a counterclaim to the suit. *Id.* at 776–779. Because the borrower could not produce evidence of an agreement meeting the conditions of § 1823(e), the district court granted summary judgment for the FDIC. *Id.* at 780. The Fifth Circuit upheld the application of § 1823(e) to bar claims against the FDIC in its corporate capacity and the *D'Oench, Duhme* doctrine against the FDIC as receiver. *Id.* at 783; *see also Bowen v. FDIC*, 915 F.2d 1013 (5th Cir.1990) (original *D'Oench, Duhme* rule applied only to a secret agreement used as a defense to a suit on a note by the FDIC in its corporate capacity; now the expanded doctrine and "protects the FDIC as a receiver or purchaser from a borrower who has 'lent himself to a scheme or arrangement' whereby banking authorities are likely to be misled," making borrower's good faith irrelevant).

The *D'Oench, Duhme* doctrine has also been applied to claims and defenses based upon pre-receivership conduct other than oral representations and secret agreements. The courts have extended this doctrine to

claims for usury, fraud, breach of covenant of good faith and fair dealing and violations of the Texas Deceptive Trade Practices Act, among others. *RSR Properties, Inc.*, 706 F.Supp. at 532 (negligence and DTPA); *FDIC v. Amberson*, 676 F.Supp. 777, 78–81 (W.D.Tex.1987) (promissory fraud cannot be asserted under § 1823(e) but actual fraud be asserted as a defense).

■ While the holding in *D'Oench, Duhme* pertains specifically to the FDIC, through § 1441a(b)(4), the powers of the RTC are the same as those of the FDIC acting as receiver. Further, the *D'Oench, Duhme* doctrine applies to the RTC. *Castleglen v. Commonwealth Sav.*, 728 F.Supp. 656, 672–73 (D.Utah 1989).

d. *12 U.S.C. § 1823(e): the statutory codification of the D'Oench, Duhme doctrine.*

The Federal Deposit Insurance Act was enacted in 1950. Within that Act, the *D'Oench, Duhme* doctrine was codified as it applies to the FDIC in its corporate capacity at 12 U.S.C. § 1823(e). FIRREA, enacted August 9, 1989,[1] amended § 1823(e) and now includes the FDIC as receiver and the RTC as receiver within the protection from agreements not meeting the requirements of § 1823(e).[2] Section 1823(e) provides:

No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it under this section or section 11, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement (1) is in writing, (2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution, (3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) has

---

1. Pub.L. 101–73, 103 Stat. 183 (1989), codified under Title 12 of the United States Code.

2. *See Texas Refrigeration Supply v. FDIC*, 953 F.2d 975 (5th Cir.1992); *Kilpatrick v. Riddle*, 907 F.2d 1523, 1526 n. 4 (5th Cir.1990); *Castleglen*, 728 F.Supp. at 673.

been, continuously, from the time of its execution, an official record of the depository institution.

12 U.S.C. § 1823(e).

■ "Section 1823(e) protection is available to the RTC for any asset it acquired by purchase or as receiver." *Castleglen,* 728 F.Supp. at 674. The purpose of the *D'Oench, Duhme* common law doctrine and § 1823(e) is to promote the stability of and confidence in the FDIC.

e. *Application of 12 U.S.C. § 1823(e) and the D'Oench, Duhme doctrine to the situation here.*

■ The Court agrees with the Receiver's position that FIRREA's protection extends to cover a situation such as this one, where the claimed violations occurred after the RTC's intervention. *See Rosa v. RTC,* 938 F.2d 383 (3d Cir.1991), *cert. denied,* — U.S. ——, 112 S.Ct. 582, 116 L.Ed.2d 608 (1991). That case involved the RTC's serving as receiver for the failed original lending institution, then as conservator of the reorganized institution, and then as receiver of the reorganized institution. *Id.* at 388–389. The RTC, while acting as conservator of the reorganized entity, assumed the original lending institution's pension plan. *Id.* Later, the RTC, acting as receiver for the original lending institution, cancelled the pension plan; thus, the actions complained of occurred between the dates of the two receiverships. *Id.* The plaintiffs argued that their claims were not against a failed institution but were against a depository institution which arose once a conservator or receiver was appointed for that institution and that the jurisdictional provision of § 1821(d)(13) [3] only applied to pre-takeover claims prior to the RTC's intervention at an· institution. *Id.* at 391–393. The court denied the plaintiffs' argument and determined that for any situation where the RTC *has been* appointed receiver, 12 U.S.C. § 1823(d) applies. *Id.* at 392. "[T]he bar embodied in clause (i) [of § 1823(d)(13) ]

reaches (1) claims for payment from the assets of [the two entities for which the RTC was appointed receiver], (2) actions for payment from those assets and (3) actions for a determination of rights with respect to those assets." *Id.* at 393. Thus, the plaintiffs' claims against the two entities for which the RTC became receiver were barred as actions for payment from the assets of a depository institution for which the RTC has been appointed receiver. *Id.*

Here, the RTC was appointed receiver of Imperial Savings Association on June 22, 1990 and receiver of Imperial Federal Savings Association on April 19, 1991. The Contract, pursuant to the language of Addendum 2, is dated March 26, 1991. The transaction complained of involves a "depository institution for which the Corporation has been appointed a receiver." The Plaintiffs seek a determination of its rights in the Property, an asset of the receivership of Imperial Federal, or alternatively, they seek damages from the receivership. Following *Rosa,* these claims are barred by § 1821(d)(13)(D).

■ Trial on the merits is not necessary before making a determination that the *D'Oench, Duhme* doctrine applies so as to remove certain facts from controversy. *Langley, Murray,* and *Lafayette Inv. Properties* all affirm district courts' orders of summary judgment on the basis of the *D'Oench, Duhme* doctrine. *Beighley* and *RSR Properties* involve district court orders, in whole or in part, granting summary judgment on the basis of *D'Oench, Duhme.*

In the instant case, Plaintiff has failed to plead any claim that survives the special defenses available to the RTC in this case. Pursuant to Fed.R.Civ.P. 56(c), plaintiffs are entitled to summary judgment as a matter of law because the pleading and summary judgment proof show that there is no genuine issue of any material fact.

---

**3.** "Except as otherwise provided in this subsection, no court shall have jurisdiction over—(i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed

receiver, including assets which the Corporation may acquire from itself as such receiver; or (ii) any claim relating to any act or omission of such institution or the Corporation as receiver." 12 U.S.C. § 1821(d)(13)(D).

■ The Court also lacks subject matter jurisdiction to grant any relief, monetary and nonmonetary, because of Plaintiffs' failure to seek relief through the administrative claims procedure of 12 U.S.C. § 1821(d)(3)–(13). Plaintiffs have failed to submit any of their claims asserted in this cause against the Receiver for determination pursuant to the administrative claim procedure. Therefore, this Court lacks subject matter jurisdiction over any of the Plaintiffs' claims against the Receiver. *See Circle Indus. v. City Fed. Sav. Bank,* 749 F.Supp. 447 (E.D.N.Y.1990), *aff'd,* 931 F.2d 7 (2d Cir.1991) ("In enacting FIRREA, Congress intended litigants like Circle Industries to first submit their claims against a failed savings and loan institutions to the RTC or FDIC before commencing an action in state court." 749 F.Supp. at 455); *Telematics Int'l, Inc. v. NEMLC Leasing Corp.,* 967 F.2d 703, 707 n. 2 (1st Cir.1992); *Rosa,* 938 F.2d at 395 (exhaustion of monetary claim through administrative claims procedure required).

C. *Receiver's claim of no reformation of the contract.*

■ Section 1823(e) and the *D'Oench, Duhme* doctrine bar affirmative claims for recovery. *See Bowen,* 915 F.2d at 1016. The Fifth Circuit denied the plaintiffs' claims which were based upon a bank officer's oral promise to lend money, which was not extended and allegedly caused the damages complained of. *Id.* at 1013–14. The court stated that "*D'Oench* bars the use of unrecorded agreements between the borrower and the bank as the basis for defenses or claims against the FDIC." *Id.* at 1016.

■ Assuming that the parties here had an oral agreement that the Property would be sold on a square foot basis, the Plaintiffs are barred from asserting this alleged oral agreement by the *D'Oench, Duhme* doctrine; therefore, their claim for reformation based upon this alleged oral misrepresentation is barred.

■ Under Texas law, reformation is allowed only when fraud, accident or mistake is found. *Davis v. Davis,* 141 Tex. 613, 175 S.W.2d 226, 230 (1943). In order to provide grounds for fraud, the Plaintiffs must show:

(1) that a material representation was made; (2) that it was false; (3) that, when the speaker made it, he knew it was false or made it recklessly without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by the party; (5) that the party acted in reliance upon it; and (6) that he thereby suffered injury.

*J.L. Williams & Co. v. Robert E. McKee, Inc.,* 612 S.W.2d 649, 651 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e.) (emphasis omitted); *see also Stone v. Lawyers Title Ins. Corp.,* 554 S.W.2d 183, 185 (Tex.1977); *Chemetron Corp. v. Business Funds, Inc.,* 682 F.2d 1149, 1171–72 (5th Cir.1982).

■ There are no grounds for reformation on an equitable basis. Such a remedy is beyond the Court's equitable powers. *Continental Oil Co. v. Doornbos,* 402 S.W.2d 879, 883 (Tex.1966) ("equity may reform the written instrument as to conform [to the agreement] but cannot create and bring into being an agreement not made by the parties"); *McClellan v. Boehmer,* 700 S.W.2d 687, 694 (Tex.App.—Corpus Christi 1985, no writ). The Plaintiffs' unilateral mistake is not a ground to support reformation. *Lathem v. Richey,* 772 S.W.2d 249, 254 (Tex. App.—Dallas 1989, writ denied); *RGS, Cardox Recovery, Inc. v. Dorchester Enhanced Recovery Co.,* 700 S.W.2d 635, 640 (Tex. App.—Corpus Christi 1985, writ ref'd n.r.e.).

■ The Plaintiffs have not plead and proved any such causes of action; thus, there are no grounds for reformation. Plaintiff Larry Hill testified by deposition that he did not speak with anyone with the Receiver or its asset manager, First Financial Equities, prior to execution of the Contract. He testified that he did not speak with anyone from the Richard Smith Company, the listing broker, prior to execution of the Contract. Further, he testified that he made no attempts to verify the square footage of the Property prior to execution of the Contract although he visited the Property four times. He also testified that he read the designation of TCAD appearing next to the 8750 figure; however, he made no attempt to question the meaning of this designation. Plaintiff Karen

Hill testified by deposition that she had not spoken with anyone with the Receiver prior to execution of the Contract. She made four or five trips to the Property. She acknowledged that she also read the designation of TCAD appearing next to the square footage figure. Tex Steeg, the listing broker, testified that he made no representations that the Property's sales price was based upon a square footage figure. The deposition testimony of Sue Reindel, an employee with the asset manager, supports this testimony.

It is undisputed that: (1) Tex Steeg obtained the 8750 square footage information for the Property from TCAD; (2) that the TCAD is reliable and commonly used in the real estate industry for square footage information; (3) that the 8750 figure set forth in the advertisements and brochures was qualified by either the notation "TCAD" beside it or the statement of "some 8750 square feet" which the Plaintiffs saw before executing the Contract; (4) that the Plaintiffs were never told that the sales price was calculated off of the square footage figure; (5) that the Plaintiffs never spoke with the Receiver, First Financial Equities, Tex Steeg or anyone with the Richard Smith Company prior to executing the Contract; (6) that the Contract contains no reference to a square footage calculation; (7) that the TCAD records showed the amount of 8750 through the date of the Contract; (8) that the Plaintiffs have no evidence that anyone with the Receiver, First Financial Equities, or the Richard Smith Company, including Tex Steeg, knew the square footage figure was incorrect prior to the execution of the Contract; (9) that the Contract contains a specific waiver of misrepresentations and that the Property was to be sold "As Is"; and (10) that the Property was never purchased by the Plaintiffs.

The representation of the 8750 square feet was not false, given that this amount was qualified when printed in advertisements and brochures either by the words "TCAD" or "some". This information was not false when made, given that this amount was reflected in TCAD records until sometime after execution of the Contract, nor was it stated recklessly without any knowledge of its truth. Further, there were no direct communica-

tions between Plaintiffs and Defendants prior to execution of the Contract so no false statements could have been made to Plaintiffs. Finally, the Plaintiffs did not purchase the Property so they cannot allege that they acted in reliance upon any false statements made to them.

Under Texas law, when claiming damages based upon fraud in the inducement to contract, "in order to recover damages for a claim of misrepresentation, it is necessary to show a material misrepresentation was made, that the speaker made it with the intention that it should be acted upon by the plaintiff, and that the plaintiff acted in reliance on it and thereby suffered some actual injury." *Fredonia Broadcasting Corp., Inc. v. RCA Corp.*, 569 F.2d 251, 258 (5th Cir. 1978). Plaintiffs have shown no injury because they did not purchase the Property and, therefore, have not been harmed by any shortfall in the square footage. Damages in an action for misrepresentation is to compensate the party for its injuries, not to provide it with a profit. *Kneip v. UnitedBank–Victoria*, 774 S.W.2d 757, 759 (Tex.App.—Corpus Christi 1989, no writ) (in borrower's suit alleging fraudulent inducement to enter loan agreement, the measure of damages was the "actual amount of his loss resulting directly and proximately from the fraud practiced on him"). The Plaintiffs did not purchase the Property, thus, they did not rely upon any misrepresentation, and they have no claim for damages.

The Plaintiffs have failed to show that accident or mistake prevented the alleged agreement that the Property's sales price would be calculated according to $85.00 per square foot from being stated in the Contract. "Under Texas law, mutual mistake occurs when both parties to a transaction believe in the present existence of the thing contracted for, that thing is material to the transaction, and that thing does not exist." *Matter of Topco, Inc.*, 894 F.2d 727, 738 (5th Cir.1990).

The Plaintiffs' claim for reformation must be denied under both federal and state law.

D. *Receiver's claim of no entitlement to breach of contract.*

The Plaintiffs claim that the Property should be sold to them for a lower cost than is stated in the Contract based upon the alleged oral misrepresentation of the sales price; i.e., the price should be lower to reflect $85.00 times the correct number of square feet in the Property. No provision of the Contract contains such a method for calculating the sales price for the Property. The price was a negotiated amount not based upon any set of factors such as a cost per square foot. This alleged oral contract term does not meet the four requirements of § 1823(e) in order to be enforceable against the RTC. *See RSR Properties,* 706 F.Supp. at 532 & n. 13. As such, this claim is unenforceable under federal law.

Also, under state law, this alleged oral modification is unenforceable. The Contract specifically provides in Paragraph 20 that "[t]his contract contains the entire agreement of the parties and cannot be changed except by their written agreement."

The Contract is unambiguous in its provisions regarding waiver of claims based upon factors not set forth in the Contract. Paragraphs 7 and 8 state in pertinent part:

"Buyer has not relied on any representation, statement, or warranty of Seller, or anyone acting for or on behalf of Seller, all matters concerning the Property to be independently verified by Buyer. Buyer agrees to take the Property "AS IS".
BUYER HEREBY WAIVES, AND SELLER HEREBY DISCLAIMS, ALL WARRANTIES OF ANY TYPE WHATSOEVER WITH RESPECT TO THE PROPERTY, EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

Under Texas law, if there is no ambiguity in a written contract, the construction of the document is a question of law for the court. *City of Pinehurst v. Spooner Addition Water Co.,* 432 S.W.2d 515, 518 (Tex.1968). If unambiguous, the court "will give effect to the intention of the parties as expressed or as is apparent in the writing." *Id.; see Deauville Corp. v. Federated Dep't Stores, Inc.,* 756 F.2d 1183, 1193 (5th Cir. 1985) ("A contract is not ambiguous if worded so that a court may give it a certain legal meaning or interpretation" and, if so, must interpret the parties' intent as expressed or as apparent from the writing.)

The Contract terms are clear in expressing the intent of the parties: the property was to be sold on an "As Is" basis and the Plaintiffs waived any claims for problems encountered as a result of the Property's condition or due to any alleged oral representations concerning the Property. As set forth above, the Plaintiffs have failed to prove that any misrepresentations were made to them regarding the calculation of the sales price or the square footage of the Property.

The Court determines that the Plaintiffs have no claim for breach of contract nor any claim for breach of contract damages based upon any alleged misrepresentations about the property.

E. *Receiver's claim that Plaintiffs are not entitled to attorney's fees based upon breach of contract.*

The Contract, at Paragraph 17, provides for attorney's fees to be awarded to the prevailing party from the non-prevailing party in any legal proceeding brought under or with relation to the Contract. Generally, such provisions are enforceable. *See Baja Energy, Inc. v. Ball,* 669 S.W.2d 836, 838 (Tex.App.—Eastland 1984, no writ) ("The general rule in Texas is that expenses incurred in prosecuting or defending a suit are not recoverable as costs or damages unless recovery for such items is expressly provided for by contract or statutory provision."). However, because the Plaintiffs have no breach of contract claim and are the non-prevailing party; thus, they are not entitled to attorney's fees as damages.

F. *Receiver's claim that Plaintiffs are not entitled to specific performance of the "reformed" contract.*

Plaintiffs are not entitled to specific performance to purchase the Property under the

Contract reformed as they desire. Plaintiffs request that the provision dealing with the sales price for the Property, clearly stated in the Contract as $750,000, be reformed to be $85 times the correct square footage of the Property, a calculation not expressed in the Contract.

▮▮▮▮ This allegation of an oral agreement will not meet the test of either § 1823(e) or *D'Oench, Duhme;* thus, specific performance as an affirmative claim for relief of the Plaintiffs is barred. *See Bowen,* 915 F.2d at 1016. Further, a request for specific performance would improperly affect the exercise of the RTC's powers under 12 U.S.C. § 1821(j). *See Shoreline Group, Ltd. v. Commonwealth Fed. Sav. & Loan Ass'n,* Case No. 90–6703–CIV–GONZALEZ, 1991 WL 496658 (S.D.Fla. Feb. 14, 1991) (S.D.Fla. 1991) (unpublished opinion) (attached as Exhibit A to the Receiver's Trial Brief regarding its subject matter jurisdiction). The Fifth Circuit has cited this holding with approval when stating that a court may not enjoin the exercise of the RTC's powers granted it by statute. *See 281–300 Joint Venture v. Onion,* 938 F.2d 35, 39 (5th Cir. 1991), *cert. denied,* — U.S. —, 112 S.Ct. 933, 117 L.Ed.2d 105 (1992). Following *Shoreline* and *Onion,* this Court lacks jurisdiction to grant specific performance.

▮▮▮▮ Under Texas law, courts will not enforce specific performance of a contract for the sale of land, or a suit for damages based thereon, if the written agreement fails to "contain the essential terms of a contract, expressed with such certainty and clarity that it may be understood without recourse to parol evidence to show the intention of the parties." *Bryant v. Clark,* 163 Tex. 596, 358 S.W.2d 614, 616 (1962); *see also Boddy v. Gray,* 497 S.W.2d 600, 605 (Tex.Civ.App.—Amarillo 1973, writ ref'd n.r.e.) ("[A]n agreement for the sale of land cannot be specifically enforced unless the contract involved is sufficiently definite in its essential provisions."); Tex.Bus. & Com.Code Ann. § 26.01 (Tex. UCC) (Vernon 1987). The alleged "reformed" Contract price is not contained within the four corners of that document; therefore, there can be no award of specific per-formance due to the absence of such a material term.

▮▮▮▮ Further, an award of specific performance is not warranted given that the Plaintiffs have failed to show that they can perform under the Contract. They have failed to tender the purchase price into escrow. Where time is of the essence as in this Contract (paragraph 11 of Addendum 1), Texas law requires a party to "perform or tender performance in strict compliance with the provisions of the contract within the time prescribed in order to entitle him to specific performance." *Liedeker v. Grossman,* 146 Tex. 308, 206 S.W.2d 232, 234–35 (1947); *Ferguson v. von Seggern,* 434 S.W.2d 380, 386 (Tex.Civ.App.—Dallas 1968, writ ref'd n.r.e.). Further, specific performance is a remedy whose award is within the discretion of the trial court. *United Coin Meter Co. v. Johnson–Campbell Lumber Co.,* 493 S.W.2d 882 (Tex.Civ.App.—Fort Worth 1973, no writ). In order to obtain specific performance, a party must show that they have no other adequate remedy at law by way of an action for damages. *Id.* at 886.

Here, the Plaintiffs have also sought damages, which if appropriate, would have provided Plaintiffs with an alternative remedy thus obviating the ability for this Court to award specific performance. They sought a monetary award of damages for breach of contract. Further, they could have sought return of their earnest money as provided under the Contract. Specifically, the EMC provides in Paragraph 16, that:

> If Buyer fails to comply herewith, Seller may either (a) enforce specific performance and seek such other relief as may be provided by law or (b) terminate this contract and receive the Earnest Money as liquidated damages. If Seller is unable without fault, within the time herein required, to (a) make any non-casualty repairs or (b) deliver the Commitment or (c) deliver the Complete Abstract, Buyer may either terminate this contract and receive the Earnest Money as the sole remedy or extend the time for performance up to fifteen (15) days and the Closing Date shall be extended pursuant to other provisions of this contract. If Seller fails to comply

herewith for any other reason, Buyer may either (a) enforce specific performance hereof and seek such other relief as may be provided by law or (b) terminate this contract and receive the Earnest Money, thereby releasing Seller from this contract.

Paragraph 9 of Addendum 1 provides:

Buyer acknowledges that Seller, by entering into this Contract, is incurring legal obligations with respect to the Property. Buyer further acknowledges that Seller would not enter into the Contract unless Buyer deposited the earnest money referenced herein to secure timely performance under the Contract. Accordingly, if Buyer fails to complete the acquisition of the Property as provided under the Contract for any reason other than as a result of a material default of Seller under the Contract, then Seller shall be released from any further obligations under the Contract and the following shall apply.

INSOFAR AS IT WOULD BE EXTREMELY IMPRACTICABLE AND DIFFICULT TO ESTIMATE THE DAMAGE AND HARM WHICH SELLER WOULD SUFFER IN THE EVENT BUYER DEFAULTS UNDER THE CONTRACT OR FAILS TO COMPLETE THE ACQUISITION UNDER THE CONTRACT, AND INSOFAR AS A REASONABLE ESTIMATE OF THE TOTAL NET DETRIMENT THAT SELLER WOULD SUFFER IN THE EVENT OF BUYER'S DEFAULT AND FAILURE TO DULY COMPLETE THE ACQUISITION UNDER THE CONTRACT IS THE SUM OF $25,000 DEPOSITED BY BUYER AS EARNEST MONEY, AND ALL INTEREST EARNED THEREON, SAID SUM SHALL BE DELIVERED BY THE HOLDER THEREOF TO SELLER AS LIQUIDATED DAMAGES UPON SELLER FURNISHING TO SUCH HOLDER A STATEMENT THAT BUYER HAS FAILED TO CLOSE THE TRANSACTION IN ACCORDANCE WITH THE TERMS OF THE CONTRACT. FAILURE OF BUYER TO DEPOSIT ANY SUCH FUNDS OR THE FAILURE OF SUCH HOLDER TO DELIVER ANY SUCH FUNDS TO SELLER FOR ANY REASON SHALL NOT IN ANY WAY AFFECT SELLER'S RIGHTS TO RECEIVE SUCH AMOUNTS AS LIQUIDATED DAMAGES.

Both Buyer and Seller initialed the above paragraph. In the event of any inconsistency between the provisions of the EMC and the Addendum, the Addendum controls and governs the rights, duties, and obligations of Seller and Buyer. The Receiver has previously offered to return the Plaintiffs' earnest money to them, which they refused.

Here, the Plaintiffs, as Buyer, have failed to complete the acquisition of the Property for a reason not a result of a material default of the Seller, the Receiver, under the Contract. The Plaintiffs failed to obtain loan approval within thirty (30) days following the effective date of the Contract, or March 26, 1991. Under the specific terms of the Contract, the Receiver is entitled to the earnest money as liquidated damages.

G. *Receiver's claim of its entitlement to have the lis pendens expunged.*

The Receiver requests that the Lis Pendens be expunged and title quieted for the Property.

Section 1821(d)(13)(C) provides that "[n]o attachment or execution may issue by any court upon assets in the possession of the receiver." 12 U.S.C. § 1821(d)(13)(C). Similarly, § 1825(b)(2) provides:

When acting as receiver, the following provisions shall apply to the Corporation.... (2) No property of the Corporation shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of the corporation, nor shall any involuntary lien attach to the Property....

12 U.S.C. § 1825(b)(2).

Courts construing this section have clearly held that § 1821(d)(13)(C) and § 1825(b)(2) prohibit the attachment of any involuntary lien to property held by a federal receiver; any such liens, such as a state law lis pendens, should be released. *See Irving Indep. School Dist. v. Packard Properties,* 970 F.2d 58, 61 (5th Cir.1992) ("The result of § 1825(b)(2) is that liens may not attach to

that property while the FDIC owns it, but a property previously encumbered must remain so."); *Santa Monica Mountains Conservatory v. FDIC,* (Cause No. 92–1650–SSH), 1992 WL 672288 (D.D.C. August 25, 1992) (citing *FDIC v. Loria,* Cause No. 3–90–1275–H, 1991 WL 626727 (N.D.Tex. Sept. 27, 1991)) (attached as Exhibit I to the Receiver's Trial Brief regarding its subject matter jurisdiction). FIRREA preempts a state law that allows a lien on property of the Receiver or equitable remedies against the Receiver. *See FDIC v. Shain, Schaffer & Rafanello,* 944 F.2d 129, 133–34 (3d Cir.1991) (defeats attorney's retaining lien); *RTC v. Elman,* 949 F.2d 624 (2d Cir.1991) (FIRREA defeated attorney's retaining lien on files for fees owed); *Valley Ranch Dev. Co., Ltd. v. Sunbelt Sav. FSB,* 714 F.Supp. 817, 818 (N.D.Tex.1989), *aff'd on other grounds,* 902 F.2d 348 (5th Cir.1990), *cert. denied,* 498 U.S. 1025, 111 S.Ct. 673, 112 L.Ed.2d 665 (1991) (federal law preempts state law to the extent state law conflicts with federal law); *Gulley v. Sunbelt Sav. FSB,* 714 F.Supp. 819, 821 (N.D.Tex.1989), *aff'd on other grounds,* 902 F.2d 348 (5th Cir.1990), *cert. denied,* 498 U.S. 1025, 111 S.Ct. 673, 112 L.Ed.2d 665 (1991) (same).

 "A suit to quiet title requires the allegation of an adverse claim. The gravity of the claim must be sufficient to place the property owner into a position that if such claim is asserted, it may cast a cloud upon his enjoyment of the property." *Katz v. Rodriguez,* 563 S.W.2d 627, 629 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.). "The claimant must base his action on the strength of his own title." *Id.; see also, Bibby v. Preston,* 555 S.W.2d 898, 901 (Tex.Civ.App.—Tyler 1977, no writ). An action to quiet title is appropriate where a spurious lis pendens clouds title to the property. *Daugherty v. Garrett,* 336 S.W.2d 642, 643–44 (Tex.Civ.App.—San Antonio 1960, writ dism'd w.o.j.).

In this case, Plaintiffs are not entitled to specific performance. The lis pendens which they filed constitutes a cloud on the Property and should be removed under both federal and state law.

**H.** *Receiver's claim of its entitlement to damages and attorney's fees.*

The Receiver requests that it be awarded damages for compensation for the loss and prejudice suffered by it due to the Lis Pendens. It asserts a right to compensation for damages as a result of the cloud on the title to the Property under *McCollum Exploration Co. v. Reaugh,* 146 S.W.2d 1109, 1111 (Tex.Civ.App.—San Antonio 1940), *aff'd,* 139 Tex. 485, 163 S.W.2d 620 (1942). *See also Bibby,* 555 S.W.2d at 903.

 By deposition testimony of Tex Steeg and by affidavit of J. Lay, the current listing agent for the property, the Receiver asserts that there have been at least three other offers to purchase the Property and which have not closed due to the Lis Pendens. Thus, the Receiver alleges that it has been denied the ability to sell the Property since May 17, 1991, the date the Lis Pendens notice was filed. However, there is no evidence or certainty that these potential sales would have closed. Thus, the Court will not award as damages the loss of the sale of the Property.

The Receiver alleges that it has incurred carrying and maintenance costs for the Property. By affidavit of Cecilia Spahi, an asset manager of First Gibraltar Realty Advisors, Inc. which has been employed by the Receiver to manage the Property, the Receiver has incurred $33,876.71 from October 1991 through May 7, 1992. Due to the uncertainty of selling the Property to another buyer, the Receiver could have incurred the same maintenance costs. Thus, the Court will not award these costs to the Receiver.

 Receiver is requesting an award to compensate it for the attorney's fees and costs which it has incurred in this lawsuit. It asserts a right to attorney's fees and costs under the Texas Civil Practices and Remedies Code § 37.009. Tex.Civ.Prac. & Rem. Code Ann. § 37.009 (Vernon 1986). Further, Paragraph 17 of the Contract provides for the award of reasonable attorney's fees and court costs to the prevailing party from the non-prevailing party should any legal proceeding be brought under or with relation to the Contract. Paragraph 17 is enforceable

against the Plaintiffs. *See Baja,* 669 S.W.2d at 838; *Mundy v. Knutson Construction Co.,* 156 Tex. 211, 294 S.W.2d 371, 373–74 (1956) (award of attorney's fees to the prevailing party was proper under the wording of the bond to pay "all costs and expenses" incurred in prosecution of the suit). However, the award of attorney's fees must be reasonable. *Baja,* 669 S.W.2d at 839–40.

By affidavit of Darlene Byrne, the attorney's fees and expenses incurred for statements dated August 31, 1991 to May 29, 1992 total $30,571.16. A supplemental affidavit of Ms. Byrne shows that for statements dated from July 31, 1992 to August 31, 1992, fees and expenses total $17,727.37. However, the Court cannot ascertain Ms. Byrne's personal knowledge of the invoices submitted by the law firm of Page & Addison, P.C.; e.g., is Ms. Byrne the same person as Darlene Echols who appears as an associate with Page & Addison, and if so, does she have personal knowledge of the Page & Addison bills submitted. Therefore, the Court desires a supplemental affidavit from Ms. Byrne as to these questions on attorney's fees and costs incurred by the Receiver in this cause, as well as the attorney's fees and costs incurred up from September 1, 1992 through the date of this opinion.

The Receiver is entitled to declaratory action to expunge the Lis Pendens and thereby quiet title to the property. The Court declines to award the Receiver damages it has suffered due to the Lis Pendens clouding title to the property for loss of a sale of the Property or for maintenance and carrying costs. However, the Court will award some amount to the Receiver as reasonable attorney's fees and costs to be determined upon receipt of the supplemental affidavit requested.

An order in accordance with this Memorandum Opinion will be issued by the Court.

### FINAL JUDGMENT

This action came on for hearing on October 5, 1992 on the Motion for Summary Judgment and Supplement thereto and other motions filed by Defendant Resolution Trust Corporation as Receiver for Imperial Federal Savings Association ("Receiver") and the Motion for Summary Judgment and other motions filed by Defendant Richard Smith Company ("Smith"). This Court signed numerous orders regarding the motions for summary judgment and other pending motions. The Court issued a Memorandum Opinion on the Receiver's Motion for Summary Judgment and Supplement thereto and, by Order filed November 24, 1992, granted this Motion. By Order filed November 24, 1992, the Court granted Smith's Motion for Summary Judgment. However, the Court reserved ruling on the reasonable attorney's fees and costs to be awarded to the Receiver and to Smith until said parties filed affidavits which set forth the amount of the fees and costs incurred in defending this cause. Based upon this Court's rulings contained in the Memorandum Opinion and Orders entered on the Motions for Summary Judgment filed by the Receiver and Smith, and based upon the affidavits, as supplemented and amended, filed by the attorneys for the Receiver and Smith regarding the attorney's fees and costs incurred in this lawsuit, this Court makes the following final order.

It is therefore ORDERED and ADJUDGED that:

1) The lis pendens filed on May 17, 1991 in Travis County Real Property Records at Film Code No. 00004705970, Document No. 91041025, regarding the pendency of this suit and the potential effect such suit would have on Lot 5, Greenpark Section One, Amended, as per the plat in Volume 85, Page 930, Plat Records, Travis County, Texas, is hereby rendered void and of no effect and is hereby expunged.

2. The Receiver is awarded the escrow money deposited by Larry and Karen Hill ("Plaintiffs") in the amount of $25,000.00, held in escrow by Commercial Title as of March 28, 1991, plus all accrued interest on the earnest money deposited.

3. The Receiver shall recover from Plaintiffs its reasonable attorney's fees and expenses incurred in the defense and pursuit of this lawsuit in the amount of $62,204.15, plus post-judgment interest on the foregoing amount at the statutory federal judgment

rate specified under 28 U.S.C. § 1961 from the date of entry of this judgment until paid.

4. Smith shall recover from Plaintiffs its reasonable attorney's fees and expenses incurred in the defense and pursuit of this lawsuit in the amount of $35,742.53, plus post-judgment interest on the foregoing amount at the statutory federal judgment rate specified under 28 U.S.C. § 1961 from the date of entry of this judgment until paid.

Judgment is hereby rendered in favor of the Receiver and Smith against the Plaintiffs Larry Hill and Karen Hill for all of such amounts set forth herein, for all of which judgment let execution issue.

The Court further ORDERS that Plaintiff take nothing by their suit against Defendants Receiver and Smith.

It is further ORDERED that all relief not specifically granted is denied.

This is a final judgment.