RSR PROPERTIES, INC., A Texas Corporation; Oakwood West, Inc., A Texas Corporation; Rudolph Jones and Richard A. Jones

v.

FEDERAL DEPOSIT INSURANCE CORP., As Receiver for First Republic-Bank Odessa, Stanley L. Jarmiolowski, Steve Helbing, Jabier Rodriguez, and NCNB Texas National Bank, et al.

No. MO–88–CA–200.

United States District Court,
W.D. Texas,
Midland–Odessa Division.

Jan. 18, 1989.

---

James M. Morris, Robert W. Minshew, Kennedy, Minshew, Campbell & Fry, Sherman, Tex., for plaintiffs.

Charles C. Frederiksen, Cynthia M. Jost, Haynes & Boone, Dallas, Tex., for defendants.

## MEMORANDUM OPINION ON MOTIONS FOR SUMMARY JUDGMENT

BUNTON, Chief Judge.

BEFORE THIS COURT is the Motion of Defendants, the Federal Deposit Insurance

Corporation ("FDIC"), as Receiver for First RepublicBank Odessa, N.A. and First RepublicBank Fort Worth, N.A., Donald E. Rayburn, Stanley L. Jarmiolowski, Steve Helbing, Jabier Rodriguez, and NCNB Texas National Bank, for Summary Judgment against Plaintiffs RSR Properties, Inc., Oakwood West, Inc., Rudolph Jones, and Richard Jones.

The lawsuit arises out of a series of dealings at the tail end of long term banking relationship between Plaintiffs and the InterFirst Bank Odessa, N.A. (IFB–Odessa). The Court will organize the discussion and the relevant factual narration under these categories: (1) loan and security agreements found in the records of the failed institution on the date of the insolvency and the basis of certain foreclosures; (2) minutes, letters, and an "agreement" upon which Plaintiff asserts there is an enforceable contract; and (3) history of discussions and contact among the parties which form the basis of Plaintiff's claims for violation of the Texas Deceptive Trade and Practices Act, the tort of fraud, tortious interference with contractual relations, and breach of an oral and/or written agreement. The circumstances of this cause require application of the federal common law doctrine set out in *D'Oench Duhme Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942).

Upon review of the pleadings, summary judgment evidence, and arguments of counsel, the Court is of the opinion that Plaintiffs have failed to demonstrate that there is a genuine question of fact as to any issue under controlling law.

### Standard on Motion for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that the moving party is entitled to a judgment as a matter of law." Rule 56(e) provides:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but ... must set forth specific facts showing that there is a genuine issue for trial.

Accordingly, the focus of this Court is upon disputes over material facts; facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Phillips Oil Co. v. OKC Corp.*, 812 F.2d 265, 272 (5th Cir. 1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 152, 98 L.Ed.2d 107 (1987), and the cases cited therein.

The Supreme Court's 1986 trilogy of summary judgment cases clarified the test for granting summary judgment. In *Anderson v. Liberty Lobby*, the Court stated that the trial court must consider the substantive burden of proof imposed on the party making the claim. In the case before this Court, the FDIC–R has the burden with respect to their claim; Counter–Defendant's RSR has the burden with respect to certain defenses he raises. The Court in *Anderson v. Liberty Lobby* defined "material" as involving a "dispute over facts which may affect the outcome of the suit under the governing law." Accordingly, though there can be dispute about the intent of the parties at one time or another, as in the case at bar, when applicable law requires more than "intent" to defeat a claim, then under the "governing law" this defense fails to stave off summary judgment. *Anderson v. Liberty Lobby* requires this Court to substantively evaluate the evidence offered by the moving and non-moving party to determine whether the evidence raises a "material" fact question which is "genuine."

In a second case, the Supreme Court reiterated that where the party moving for summary judgment has established *prima facie* that there is no genuine issue as to any material fact, the non-moving party must then come forward with "specific facts" showing a genuine issue for trial. It must be "more than simply ... that there

is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A third case, *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) held that where the moving party shows that the opposing party is unable to produce evidence in support of its case, summary judgment is appropriate. In *Celotex Corp.*, it was not necessary for the motion for summary judgment to be supported by affidavits or other material specifically negating the non-moving party's claim so long as the District Court was satisfied that there was an absence of evidence to support it. At that point the burden shifted to the non-moving party to produce evidence in support of its claims; if it did not produce any, summary judgment was required.

It is well settled that suits on promissory notes are appropriate questions for summary judgment. *Federal Deposit Insurance Corp. v Cardinal Oilwell Servicing Co.*, 837 F.2d 1369, 1371 (5th Cir.1988). Ambiguous contracts where parties' intent presents a question of fact are generally not appropriate matters for summary judgment determination. *Fischbach and Moore, Inc. v. Cajun Electric Power Cooperative, Inc.*, 799 F.2d 194, 197 (5th Cir. 1986). However, where the course of dealings between the parties does not rise to the level of an enforceable contractual agreement, the rule of *Fischbach and Moore, Inc.* does not apply. Nor is there a significant dispute as to motivation and intent of the parties in this cause so as to preclude imposition of summary judgment. See e.g. *Honore v. Douglas*, 833 F.2d 565, 569 (5th Cir.1987); *Thornbrough v. Columbus & Greenville R.R. Co.*, 760 F.2d 633, 641 (5th Cir.1985). Under controlling law, the existence of a contract which satisfies the Federal common and statutory law relating the liquidation of the assets of a failed bank by the FDIC renders immaterial the motivation and intent of the parties.

This Court has demonstrated its willingness to allow a non-moving party his day in court in borderline cases where under governing law or reasonable extensions of ex-isting law, the hearing of some testimony would be helpful in understanding the proper application of the law. However, under the strict requirements of the law applicable in this case, this Court is not persuaded that there is even a possibility of averting a directed verdict in favor of the Defendant and Counter–Plaintiff.

### Procedural History

Plaintiffs brought a lender liability lawsuit against IFB–Odessa on May 19, 1986 prior to a declaration of insolvency. IFB–Odessa promptly filed a counterclaim seeking to recover the amounts due under the notes and guaranty executed by Plaintiffs in favor of IFB–Odessa. In 1987, IFB–Odessa merged with RepublicBank Odessa, to form First RepublicBank Odessa and the resulting entity was substituted as the party in interest in this litigation.

On May 6, 1988, Plaintiffs filed an amended Petition, joined First RepublicBank Fort Worth, the First RepublicBank Corporation, Donald E. Rayburn, Stanley Jarmiolowski, Steve Helbing, and Jabier Rodriguez as Defendants. First RepublicBank Corporation declared bankruptcy and has been dismissed.

On July 29, 1988, the Comptroller of the Currency declared FRB–Odessa and FRB–Fort Worth insolvent and closed the banks pursuant to 12 U.S.C. Sec. 191. FDIC was appointed Receiver pursuant to 12 U.S.C. Sec. 191 and 1821(c). On the same date, the FDIC–C, pursuant to 12 U.S.C. Section 1821(i) used its discretion to establish a "Bridge Bank," as defined in 12 U.S.C. 1813(i)(2), known as JRB Bank, National Association, Dallas, Texas ("JRB Bank"). The FDIC–Receiver entered into a Purchase and Assumption Agreement with JRB Bank, under which JRB Bank was assigned certain assets and liabilities of FRB–Odessa, including the notes, guaranties and security agreements which are the subject of this suit. Pursuant to Section 2[13] (f) of the FDIC Act (12 U.S.C. Section 1823(f)), the FDIC–C then solicited offers from qualified bidders for the provision of management services to and eventual acquisition of JRB Bank. The FDIC–C se-

lected NCNB Corporation's bid for JRB Bank. The Comptroller of the Currency later changed the name of JRB Bank to NCNB Texas National Bank.[1]

### Loan and Security Agreements Found In the Records of the Failed Institution

Summary judgment evidence establishes that on April 26, 1985 Plaintiff RSR Properties Inc., (RSR) executed and delivered to IFB–Odessa a promissory note in the amount of $140,000.00. At the same time, Rudolph Jones and Richard Jones executed guaranties of all of the debts of RSR. The April 26 note was secured by a deed of trust covering real property.[2] This note matured on March 21, 1986. Interfirst Bank gave notice and demand of default, noticed the foreclosure of the real property securing the note and sold the property on May 6, 1986 for the price of $98,490.00. After the proceeds of the sale were offset against the note, a deficiency remained on the principal and unpaid interest.

RSR executed a second note on April 25, 1986 and delivered it to IFB Odessa in the original amount of $1,329,808.00. This note was similarly guaranteed by Rudolph and Richard Jones and secured by a deed of trust covering certain real property.[3] This second note matured on February 1, 1986, demand was made by the bank and notices were given of foreclosure of the collateral deed of trust. On May 6, 1986 this property was sold at auction and the proceeds were applied to the amount due on the note. A deficiency remained on the principal and unpaid interest.

Rudolph Jones in his individual capacity executed and delivered a third note to IFB–Odessa in the amount of $389,817.53 on April 26, 1985. This note was also secured by a deed of trust.[4] This note matured on February 10, 1986 and all unpaid amounts became due and payable. Rudolph Jones did not pay the amounts due on demand and notice of foreclosure was given by the bank. On May 6, 1986 the property securing this note was sold and applied to the principal remaining on the note. A deficiency remained on the principal and unpaid interest.

Subsequent to the foreclosures and adjustment of the remaining balance on the notes, the bank made demand on the Plaintiffs for the amounts of the deficiencies. At the time of the declaration of insolvency of the First RepublicBank Odessa, the notes and guaranties were in the possession of the bank. FDIC transferred the notes to NCNB, the present owner and holder of the Notes.

### Minutes, Letters, and an "Agreement" Upon Which Plaintiff Asserts an Enforceable Contract

Plaintiffs assert that on May 31, 1985, Rudolph Jones in his individual capacity and as President of RSR Properties and Oakwood West, Inc., entered into an agreement with IFB–Odessa for the renewal of each of the four loans. The one-page document is captioned "Loan Agreement" (hereafter, "1985 'Loan Agreement' ") The document begins with a recital of the four notes and then states the understanding of the parties that (1) the notes are inadequately secured; (2) certain repayment terms are considered longer than appropriate; and (3) that the parties wish to maintain the credit relationships "on a sound basis." To this point, there are no substantive contractual terms of any kind; the document is a memorandum of certain discussion points. Next, the document makes four provisions upon which Plaintiff contends there is the basis for a bilateral agreement binding the parties.[5]

---

1. The declaration of insolvency, appointment of the FDIC–Receiver, establishment of JRB Bank by the FDIC–C, and sale of an interest in JRB Bank to NCNB all occurred on the same date, July 29, 1988.

2. The deed of trust covered three industrial buildings in the Midland–Odessa area.

3. The property secured by the deed of trust were all but two units in the Summit Office Condominiums in Odessa.

4. The deed of trust covered various units in the Brittany Condominiums in Odessa.

5. The remainder of the agreement states in full:

Plaintiff has represented by affidavit in support of its Rule 56(f) Motion to provide supplemental evidence in support of its Response to Motion for Summary Judgment that the 1985 "Loan Agreement" was approved by the IFB–Odessa Board of Directors or the Loan Committee. For the purpose of considering these Motions for Summary Judgment, the Court will presume that minutes exist which indicate that the May 31 "Loan Agreement," on its terms, was considered and accepted by the Board of Directors or the Loan Committee.[6] Together, this evidence would tend to establish that the Bank considered renewing the notes and that the 1985 "Loan Agreement" was starting point of the negotiation process.

### Contacts Between the Parties Offered as the Basis for Plaintiff's Related Claims

Plaintiff's voluminous rendition of the contacts between the parties detail a course of negotiations from which Plaintiffs believed that when the notes matured in 1986 they would be renewed on terms which would be acceptable to them. The 1986 proposed agreement was not acceptable to Plaintiff; Plaintiff's counter proposal was not acceptable to IFB–Odessa.

Defendant Rodriguez, a loan officer at IFB–Odessa represented that he was preparing the renewal notes and that he did not anticipate any problems in securing committee approval. Rodriguez could not bind the Bank. Rodriguez participated in negotiations with Plaintiff Richard Jones for the renewal of the four loans in the early part of 1986. It is in dispute whether

Rodriguez's optimistic projection about the approval of the loans was subject to the ability of the Jones to agree to the terms of a new loan agreement. In any event, there is no dispute that Rodriguez did not have the power to bind the bank to a loan agreement and that it would not have been reasonable of the Jones to presume that Rodriguez's representations would be binding. Rodriguez's contacts with the Plaintiffs were within the performance of his duties.

Defendant Steve Helbing first met the Plaintiffs before December 5, 1988. He participated in the decisions at the bank involving the Plaintiffs' notes; however there is no summary judgment evidence from which the inference can be drawn that he acted outside of the scope of his employment.

Defendant Stanley Jarmiolowski, also an employee at IFB–Odessa, spoke briefly and socially to the Plaintiffs on one occasion. Though he participated in the making of decisions in relation to the Plaintiffs' loans, there is no summary judgment evidence that he acted in his individual capacity and not as an employee of the Bank.

These contacts and inferences are the basis of Plaintiffs' allegation that the Defendant persons and entities purposely established terms unacceptable and unfavorable as to Plaintiffs which prevented the renewal of the notes with the objective of foreclosing on the properties at bargain prices. However, there is no summary judgment evidence available to support a claim for violation of the Texas Deceptive Trade and Practices Act. There is no evidence that these officers of the bank repre-

---

"In that regard, InterFirst Bank, Odessa, requests debtors agreement of the following:
  1. Rudolph Jones—At next maturity this loan will be reduced or amortization increased to provide a 15 year amortization.
  2. Oakwood West Inc., #9004 at the next maturity of this note, the principal will be reduced or additional, acceptable collateral provided to achieve a 75% loan to value percentage.
  3. RSR Properties Inc., #1002 at the next maturity of this note the principal balance will be reduced or additional acceptable collateral provided to achieve an 80% loan to value percentage."

4. A quarterly report will be provided to the bank by the 30th day of the following quarter, which will contain data which the bank and debtors shall agree to, but shall in substance, contain information enabling the bank to maintain a current, informed knowledge of consolidated cash flow, history and projections, current and projected projects, pending sales etc. Finalization of this report shall be accomplished by agreement of the parties no later than July 15, 1985.

6. Under this Court's discussion at text accompanying footnote 13, this fact is not material under controlling law.

sented that the goods or services had characteristics that they did not; that an agreement conferred rights which were not there in the agreement; or made any other untrue representation.[7] More material under the controlling law, there is no evidence that any discussion between the individual Defendants and the Plaintiffs did not involve subject matter pertinent to the contractual relations represented by the note or the negotiations to enter into renewals of the notes in 1986.

■ In sum, Plaintiffs offer evidence in support of the proposition that the loan committee had actual or constructive knowledge of a precarious and complex network of loans which relied on the renewal of the subject notes to keep afloat. It appears that there was a house of cards requiring the placing of key cards—the 1986 renewal of the subject notes upon their maturity—to prevent the house from toppling. However precarious was Plaintiffs' position or great the extent of the potential loss, these elements alone do not create a duty in tort where the relationship is contractual.

### Claims of the Parties

Plaintiffs seek damages under the Deceptive Trade Practices Act on the grounds that representations were made about the banking services and loans which were false; and that Plaintiffs are consumers under that Act. Plaintiffs claim damages for the torts of fraud and interference with a contract against the individuals and the entities. The tortious interference charge relies on a finding of the Court that the 1985 "Loan Agreement" is a legally binding contract.

Plaintiff also states that the 1985 Loan Agreement prevented default on the notes and, therefore, that the foreclosure on the collateral was wrongful. There is no other basis plead for wrongful foreclosure.

Plaintiff pleads negligent and grossly negligent breach of certain alleged duties; specifically:

1. to hire and assign competent loan officers,

2. to implement reasonable and fair loan renewal and extension policies,

3. to disclose to Plaintiffs changes in bank loan policies,

4. to promptly consummate the 1985 "loan agreement",

5. to comport with certain standards of fair play regarding the business interests of the Defendants, and

6. to give the Plaintiffs a reasonable opportunity to arrange alternate financing or to seek advice of counsel.

Under the heading of "breach of contract", Plaintiffs rely on the 1985 "Loan Agreement" to establish an enforceable contract which IFB–Odessa is said to have breached. Again relying on the 1985 "Loan Agreement", and independently on a "special relationship" of the parties, Plaintiffs plead a breach of duty of good faith and fair dealing.

### Defendants' Motion for Summary Judgment [8]

Defendants offer several alternative legal basis for their Motions for Summary Judgment:

1. Plaintiffs cannot enforce claims against the FDIC and NCNB because they are barred by the D'Oench, Duhme doctrine.

---

7. Plaintiffs claim that among the representations made was the existence of a false "collateral crisis" in relation to the loans which eventually caused the imposition by the Bank of unacceptable terms for renewal of the notes. In addition, Plaintiffs claim that Defendants represented that the loans would be renewed no matter the circumstnaces; that the proposed 1986 loan agreement would not be unduly restrictive on Plaintiffs, restrict their flexibility, or interfere with their business activities; that the loan agreements would be similar to the previous agreements; that the loans would be renewed and extended upon payment of accrued interest to a date current in 1986.

8. There are two separate Motions for Summary Judgment, the first filed on December 6, 1988; the second filed December 21, 1988. The Motions purport to supplement each other and thus, the Court will consider them collectively.

2. All of the Plaintiffs claims relate to an alleged breach of an agreement which does not exist; the 1985 "Loan Agreement" is no more than an agreement to agree and is not enforceable under Texas law.

3. Plaintiffs cannot enforce the claims against the individual Defendants because they were at all times acting within the scope of their employment.

4. There is no independent legal duty governing the contacts of the parties for which relief could be had.

### Rule of D'Oench Duhme

Under the rule first announced in the United States Supreme Court's decision of *D'Oench Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), borrowers are estopped to assert alleged "secret agreements" with a once-solvent bank as defenses to their liability on notes held by the FDIC. Thus, the *D'Oench Duhme* doctrine is a rule of estoppel which has been interpreted by subsequent Courts to create an irrefutable presumption in favor of the FDIC that the documents in the records of the bank on the date of insolvency represent the true agreement between the parties.[9]

■ The record demonstrates without ambiguity that the Plaintiffs executed the notes which are the subject of this suit.[10] Under well established principles, NCNB has a right to summary judgment on the twin basis of execution of the notes and execution of the Guarantys.

■ However, the basis of Plaintiffs' claim in avoidance of liability on the notes relate to an alternate course of dealings; the 1985 "Loan Agreement." Further, Plaintiffs assert that the FDIC and NCNB possessed actual knowledge of the alleged contractual agreement at the time of the insolvency and that this prevents them from asserting the special federal defenses. Whether these entities had actual or constructive knowledge of the dispute is of no avail to the Plaintiffs. The rule of *D'Oench Duhme* is not set aside on the basis of FDIC's knowledge of the alleged bilateral agreement. See *FDIC v. Investors Associates X, Ltd.*, 775 F.2d 152 (6th Cir.1985).

The implication of the bar of *D'Oench Duhme* is that those affirmative defenses and counterclaims which are deemed barred as to the FDIC are equally barred as to NCNB, an entity taking the instruments from the FDIC and under the management of the FDIC. *FSLIC v. Murray*, 853 F.2d 1251 (5th Cir.1988) and cases cited therein; also *FDIC v. Cremona Co.*, 832 F.2d 959, 964 (6th Cir.1987), cert. dismissed sub. nom, *Gonda v. FDIC*, — U.S. ——, 108 S.Ct. 1494, 99 L.Ed.2d 879 (1988).

It is not a far reach to conclude that the *D'Oench Duhme* doctrine also bars the assertion of affirmative claims for relief against the FDIC and its successor for alleged wrongful conduct by the failed bank. *Beighley v. FDIC*, 676 F.Supp. 130 (N.D.Tex.1987), aff'd, 679 F.Supp. 625.[11]

---

**9.** It is not necessary to discuss the rationale of the rule of *D'Oench Duhme* other than to state that "public policy requires ..." the estoppel. "The test is whether the note was designed to deceive the creditors or the public authority or would tend to have that effect." (315 U.S. at 459, 62 S.Ct. at 680).

Intent to deceive the bank examiners is not required. *Taylor Trust v. Security Trust Federal Savings and Loan Ass'n*, 844 F.2d 337 (6th Cir. 1988). It is enough that the maker of the note is responsible for the creation of the note.

The United States Supreme Court recently endorsed the *D'Oench Duhme* doctrine in *FDIC v. Langley*, 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987).

**10.** The Fifth Circuit has ruled without variance that defenses of failure of consideration, fraud

in the inducement, and misrepresentation are barred. See e.g. *FDIC v. Cardinal Oil Well Servicing Co.*, 837 F.2d 1369 (5th Cir.1988); *FDIC v. McClanahan*, 795 F.2d 512 (5th Cir.1986).

The circumstances of this case do not present the circumstance of "fraud in the factum" which the Supreme Court indicated in dicta in *FDIC v. Langley* was a defense that is not barred by the doctrine of *D'Oench Duhme*. The instruments which are the subject of this action are enforceable on their face.

**11.** In *Beighley*, the Court rejected an argument that Langley is limited to defenses to the notes. The Court held that 23 U.S.C. Sec. 1823(e) bars any use of an unwritten, unapproved promise, whether as a defense or as a basis for affirmative relief: "Plaintiffs' affirmative claim is only

In *Beighley*, the makers of a note brought an action for damages and for equitable relief against a bank for breach of contact, common law fraud, fraud under Tex.Bus. and Comm.Code Sec. 27.01 (DTPA), breach of fiduciary duty, promissory estoppel and breach of agency contract. The Court held that 12 U.S.C. Sec. 1823(e) barred the maker's action.[12]

If the 1985 "Loan Agreement" does not meet the test of 12 U.S.C. Sec. 1823(e), then no breach of contract claims would survive and there would remain no valid defense for NCNB's claim for deficiency on the notes. Similarly, the ancillary claims sounding in tort should be dismissed.

### Whether the 1985 "Loan Agreement" Is Enforceable as to the Defendants in this Cause

■ The 1985 "Loan Agreement" falls short of an enforceable agreement under *he applicable law of contracts as well as the requirements of 12 U.S.C. Sec. 1823(e) relating to the assertion of an agreement in defense of notes within the possession of the liquidator.[13]

■ The summary judgment evidence establishes that extensive negotiations were required to raise the memorandum to the level of an agreement. The document does not provide for an interest rate, set provisions for default, specify the dates or duration of the renewals, or detail the specific collateral provisions which were in dispute. On the plain language of the requirements of 1823(e), there must be an "agreement." There is no agreement capable of enforcement under Texas law against any party. Thus, even the threshold test for applicability of 1823(e) is not met. The Court also notes that the putative agreement does not meet the requirement that the asset be acquired contemporaneous with the execution of the document; it sketches out a potential agreement which never became reality.[14] *Willowood Condominium Ass'n, Inc. v. HNC Realty Co.*, 531 F.2d 1249 (5th Cir.1976). The text of the 1985 "Loan Agreement" is even less complete than the letters which were the subject of the suit in *Willowood Condominium*, found insufficient under controling law by

as good as their defenses to FDIC's counterclaim." *Id.* at 132. The reasoning of the Court in *Beighley* bears study:

"The essential holding of *Langley* is that the FDIC should not be prohibited from pursuing a claim except when the very narrow terms of 12 U.S.C. Sec. 1823(e) are satisfied exactly. To contend, as plaintiffs do, that the holding is not applicable to their affirmative claims against the FDIC is, while technically defensible, to misunderstand *Langley*'s import. To allow a claim against the FDIC asserting the very grounds that could not be used as a defense to a claim by the FDIc is to let technicality stand in the way of principle. Moreover, the effect of such an approach would be to reduce actions Congress has allowed the FDIC to pursue to nullities since defendants could counterclaim and recover what they lost." *Beighley* at 132.

**12.** See also the dicta recited in footnote in *FDIC v. Lattimore Land Corp.*, 656 F.2d 139, 146, n. 13 (5th Cir.1981).

**13.** Section 1823(e) codifies the common law rule articulated by the United States Supreme Court in *D'Oench Duhme & Co. v. FDIC.* Section 1823(e) must be met in order for Defendant to prevail. Section 1823(e) provides:

No agreement which tends to diminish or defeat the right, title or interest of the Corpo-

ration [FDIC] and any asset acquired by it under this section, either as security for a loan or by a purchase, shall be valid against the corporation unless such agreement (1) shall be in writing, (2) shall have been executed by the bank and the person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the bank, (3) shall have been approved by the Board of Directors of the bank or its loan committee which approval shall be reflected in the minutes of said board or committee and (4) shall have been, continuously, from the time of its execution, an official record of the bank. 12 U.S.C. Section 1823(e) (1980). Agreements not meeting all four requirements set forth by the statute are unenforceable against the FDIC–C. *FDIC v. DeJesus–Velez*, 678 F.2d 371 (1st Cir.1982). Such is the case here.

**14.** Of course, the argument that there was an oral contract created between the bank and the Plaintiffs is less tenuous for similar reasons. Alleged oral side agreements not made part of the note are not valid against the FDIC–C. *FDIC v. Castle*, 781 F.2d 1101, 1107 (5th Cir.1986) [Citing *FDIC v. Lattimore Land Corp.*, 656 F.2d 139 (5th Cir.1981) ] *See also: FDIC v. Roldan Fonseca*, 795 F.2d 1102 (1st Cir.1986). Thus, these claims fail by virtue of the requirements set forth in Section 1823(e).

the Fifth Circuit.[15]

### Claims Against the Individual Defendants

 There is no summary judgment evidence which raises the implication that any of the acts were performed or representations of the individual Defendants were made outside of the scope of their employment. Such a showing is required to proceed against them individually. *Talmadge Tinsley Co., v. Kerr*, 541 S.W.2d 207, 209 (Tex.Civ.App.–Dallas 1976, writ ref'd n.r.e.).

The pleadings establish that the individual Defendants were not parties to any contract with any of the Plaintiffs, no duty of good faith can be imposed upon them under the UCC or other common law principle.

Of course the individual Defendants were not individual contracting parties in any alleged loan agreement and thus, no claim for breach of an agreement to renew the contract could be made against them. For the foregoing reasons, Summary Judgment on Plaintiffs' claims against the individual Defendants is proper.

### Conclusion

Because the Court is of the opinion that Plaintiffs did not present any evidence to dispute the fact there was no agreement to renew the loans in 1985; that the loans were not renewed in 1986; and that applicable federal law relating to the liquidation of the assets of an insolvent banking institution protects both the FDIC and the NCNB from the Plaintiffs claims, summary judgment is appropriate as to NCNB's claims on the notes and in favor of all Defendants as each and every claim by Plaintiffs. The Court further finds that Plaintiffs have failed to demonstrate a genuine issue as to whether the acts of the individual Defendants were negligent, grossly negligent, in violation of the Decep-

tive Trade Practices Act or outside the scope of their employment. Accordingly,

IT IS ORDERED that Defendants' Motions for Summary Judgment on all claims is GRANTED. Defendants shall go forth free of judgment. By separate Order, the Court will enter Judgment and assess costs of Court against Plaintiffs.

---

**15.** To be enforceable, a contract must be certain enough to "define the nature and extent of the parties' obligations" without resort to parol evidence.

(...)

"There can be no binding contract between the parties if essential terms were left open for future negotiations between them." *Willowood* at 1251.