Larry D. CROWE, et al.

v.

James W. SMITH, et al.

Civ. A. No. 92–2164–M.

United States District Court,
W.D. Louisiana,
Monroe Division.

Feb. 23, 1994.

Joseph R. Ward, Jr., Lynn H. Frank, Ward & Clesi, New Orleans, LA, for plaintiffs.

Leroy Smith, Jr., Tallulah, LA, for James W. Smith.

Russell Hart, pro se.

Robert S. Rooth, Corinne A. Morrison, James C. Young, Chaffe McCall Phillips Toler & Sarpy, Susan R. Laporte, Sobol & Pitts, New Orleans, LA, Anne B. Sobol, Slidell, LA, for Agrarian Development and MLM Services Inc.

J. Allen Harvey, Jr., Monroe, LA, for Vernon McCrory, James E. Wooldridge, Bobby Thrialkill, Hugh Roche, Dwight Vines and Malcolm Maddox.

Judy L. Burnthorn, Nancy J. Marshall, Deutsch Kerrigan & Stiles, New Orleans, LA, for Johnny Dollar.

Raymond J. Salassi, Jr., Jones Walker Waechter Poitevent Carrere & Denegre, New Orleans, LA, Kurt D. Engelhardt, Hailey McNamara Hall Larmann & Papale, Metairie, LA, for McLeod Swearingen Verlander et al.

Raymond J. Salassi, Jr., Jones Walker, New Orleans, LA, for Robert P. McLeod, Lawson L. Swearingen and David E. Verlander, III.

Kurt D. Engelhardt, Hailey McNamara Hall Larmann & Papale, Metairie, LA, Judy L. Burnthorn, Nancy J. Marshall, Deutsch Kerrigan & Stiles, New Orleans, LA, for Elmer G. Noah, II and Kirby O. Price.

Robert S. Rooth, Corinne A. Morrison, James C. Young, Chaffe McCall Phillips Toler & Sarpy, New Orleans, LA, for Resolution Trust Corp, Receiver obo Peoples Homestead Sav. Bank FSB.

Colette J. Winston, U.S. Dept. of Justice, Torts Branch, Civil Div., Washington, DC, for U.S.

### RULING

NAUMAN S. SCOTT, District Judge.

Before the court are five Fed.R.Civ.P. 12(b)(6) Motions to Dismiss and alternative Motions for Summary Judgment filed on behalf of defendants Johnny E. Dollar; Vernon McCrory, James E. Woolridge, Bobby Thrialkill, Dwight Vines, and Malcolm Maddox (the McCrory defendants); Hugh Roche; Robert P. McLeod, Lawson L. Swearingen, David E. Verlander, III (the McLeod defendants); and Kirby O. Price and Elmer G. Noah, II (Price & Noah). These defendants urge the court to dismiss the claims of plaintiffs, Larry D. Crowe, Pioneer Produce Co. and Sue Ellen Silman as the administratrix of the succession of Reba Crowe (Crowe), on several identical grounds.

### I. *Factual Background*

This lawsuit arises from a series of land development dealings centering on two properties known as Eagle Bend and Australia Island. In 1979, Crowe sold 410 acres of land known as the Forrest Tract and put up $700,000.00 in cash as a down payment to buy the 9,000 acre Morrissey Property in Mississippi. The total price of this land was $5.3 million. The Morrissey Family Trust financed the remaining $4.6 million owed on this property with a note payable over 30 years at a 6% rate of interest. This land became known as Eagle Lake Farms. Crowe took out an additional $800,000.00 in loans from the Farmer's Home Administration (FmHA) to develop the property and build 10 homes there.

In 1982, Crowe and James W. "Sonny" Smith became business partners and purchased 4,700 acres of land known as Austra-lia Island from the Nelson Baker Hunt Trust. This property is located partly in Warren County, Mississippi (1,100 acres) and partly in Madison Parish, Louisiana (3,600 acres). The purchase price of this land was $5.2 million. The partners put up $400,-000.00 as a cash down payment, borrowed $2.8 million from Deposit Guarantee Bank, and signed a promissory note in the amount of $2 million, made payable to the Hunt Trust. Each partner signed the notes individually and the property was conveyed to them individually.

Troubles began in 1985 when, in an effort to develop Eagle Lake Farms more rapidly, Crowe sought a loan from People's Homestead Federal Bank for Savings (People's). Instead of entering into a loan agreement, however, Crowe became a partner in a venture with a wholly-owned subsidiary of People's, Agrarian Development Corporation (Agrarian). People's board of directors approved the partnership in a meeting on March 19, 1985. The Crowe/Agrarian partnership became known as Eagle Bend Development. In that same meeting, the directors also voted to give Russell Hart, the president of People's, control over the operation of Eagle Lake Development. On April 3, 1985, Crowe conveyed Eagle Bend Farms to the Eagle Bend Development partnership.

Under the partnership agreement, People's assumed 50% of the Morrissey loan and 50% of the obligation to FmHA. People's also agreed to pay the sum of $3.5 million to liquidate debts on the property and to create a $1 million capital account to finance future development of the project. In exchange, Crowe transferred to the partnership a 50% interest in his Eagle Lake assets, including the farm land, condominiums, houses, a flying service, and farm equipment.

Crowe alleges that, soon after the formation of the partnership, Russell Hart, the officers and directors of People's,[1] Dollar, the law firm of McLeod, Swearingen, Verlander, Dollar, Price & Noah, and Sonny Smith devised a plan to fraudulently acquire Crowe's interest in Eagle Bend and to squeeze him out of his interest in Australia Island. The

---

1. This Ruling addresses motions submitted by People's directors McCrory, Woolridge, Thrial- kill, Vines, Maddox and Roche [hereinafter collectively referred to as "the Directors"].

defendants' purported scheme involved whip-sawing Crowe in a flurry of legal proceedings (including the fraudulent institution of bankruptcy proceedings, liquidation actions, and foreclosure proceedings), starving Crowe for cash, and overpowering Crowe through their greater resources, such as their retainer of attorneys Dollar and Robert McLeod.

We need not detail the complex chronology of events Crowe alleges took place between 1986 and 1990 in furtherance of the defendants' scheme to divest him of his interest in Eagle Bend and Australia Island. Instead, a brief, noncomprehensive listing of the allegations shall suffice. Crowe claims that the defendants[2] ousted him as farm manager; refused to allow Eagle Bend's participation in a U.S. Department of Agriculture farm subsidies program; instituted a fraudulent foreclosure proceeding in West Carroll Parish, claiming that Crowe had used property there to cross-collateralize crop loans taken by the two farm partnerships; created an emergency situation to justify their obtaining Chapter 11 and Chapter 7 bankruptcy orders; refused to pay for the construction of sewers and streets at Eagle Bend, thus preventing the sale of condominiums; forbade leasing land to farmers whose rent payments might have covered the note obligations; and demanded his payment, but not that of his partners Smith and Agrarian, of crop loans for Eagle Bend and Australia Island. Crowe, now claiming he was financially exhausted and unable to continue litigation, entered into a Compromise Agreement with Agrarian. People's incorporated MLM Systems, Inc. which, pursuant to the Compromise Agreement, acquired Crowe's 50% interest in Eagle Bend Development. Crowe claims that People's/Agrarian violated the Compromise Agreement by preventing Crowe from gaining title to an airplane and by failing to obtain his release from the FmHA mortgages on Eagle Bend.

Further confusing matters, the Resolution Trust Corporation (RTC) placed People's into receivership on October 19, 1989. RTC acted as conservator, reorganizing the bank as People's Homestead Savings Bank, FSB.

After RTC put Eagle Bend up for sale, Crowe sought to repurchase the property and found financing with a group of Tennessee investors, who submitted a written purchase offer. RTC rejected the offer, ruling that the offer did not meet bidding conditions. On January 25, 1990, Crowe filed suit seeking to enjoin the sale of Eagle Bend. Crowe alleges that RTC attorneys told the court that the property was not for sale; accordingly, the motion for injunctive relief was denied. *See Larry Dean Crowe v. Eagle Bend Development, et al,* No. 90–356 (La. Dist.Ct. 4th April 24, 1990). Subsequently, Sonny Smith purchased Eagle Bend for $10.00 and an assumption of the Morrissey note.

Crowe filed this suit on December 2, 1992, naming 19 separate defendants.[3] The Complaint, as amended, seeks relief for violations of 18 U.S.C. § 1962(a), (b), (c) and (d) (civil RICO); sets forth causes of action for fraud, unfair trade practices, intentional infliction of emotional distress, breach of fiduciary duty, tortious interference with contract rights, and breach of contract; asks for a declaration that Mississippi court judgments are null and void; and prays for money damages from the RTC pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 2671, *et seq.*

## II. Dollar's Motion and Those Adopting it by Reference

The instant Motions to Dismiss and alternative Motions for Summary Judgment all refer to and adopt arguments submitted by

---

**2.** We use the term "defendants" loosely for purposes of this Ruling, not meaning to associate each of the defendants herein with each of the alleged acts. Crowe claims that Dollar is liable for his actions while he served as president for People's, attorney for People's, and president of MLM. Crowe holds the McLeod defendants and Price & Noah vicariously liable as law partners to Dollar. Crowe maintains that the Directors, except Malcolm Maddox, are liable for their pre-receivership actions while they served as directors of People's, Agrarian, and MLM. Crowe asserts that Maddox is liable for his actions while he served as President and Chief Executive Officer of People's from April 1, 1984 to June 8, 1990.

**3.** Crowe filed an amended complaint on January 4, 1993, naming Malcolm Maddox as an additional defendant.

other parties, leaving us with a virtual Gordian knot comprised of intertwined motions. The McCrory defendants and Roche adopt by reference the Motion to Dismiss and the alternative Motion for Summary Judgment filed by Dollar. The McLeod defendants have filed a separate Motion to Dismiss in addition to a Motion to Dismiss and an alternative Motion for Summary Judgment which adopts Dollar's motion by reference. Price & Noah adopt Dollar's motion by reference, as well as the McLeod defendants separate Motion to Dismiss. Dollar also adopts the McLeod defendants' Motion to Dismiss. This Ruling does not attempt to serve as Alexander's sword, swiftly cutting through the intricate weave of motions. Instead, we try to unravel the coil of motions a thread at a time. In particular, this Ruling addresses Dollar's Motion to Dismiss and alternative Motion for Summary Judgment and those motions adopting Dollar's motion by reference, but does not address the portions of the Price & Noah and Dollar motions which adopt the McLeod motion by reference.

Dollar asks us to dismiss, based on the *D'Oench, Duhme* doctrines, all of Crowe's claims arising from pre-receivership events. Dollar also requests us to dismiss, pursuant to Fed.R.Civ.P. 56, Crowe's claims relating to his post-receivership actions based upon the absence of any genuine issue of material fact. Regardless of whether the post-receivership claims are dismissed, Dollar claims that all RICO allegations against him should be dismissed for the absence of sufficient predicate acts to state a RICO cause of action. Dollar further asserts that, with respect to the RTC/Smith sale, all of Crowe's claims for consequential and other damages should be limited to his bid preparation costs.

With respect to Crowe's state law claims, Dollar asserts that the breach of contract and fiduciary duties claims should be dismissed due to the absence of any generalized, contractual or fiduciary duty on the part of Dollar. Dollar further maintains that Crowe's claims of fraud, intentional infliction of emotional distress, tortious interference with contract rights and unfair trade practices should be dismissed as prescribed.

## A. *D'Oench, Duhme*

 The recent failure of many federally insured depository institutions has generated a great deal of litigation revolving around the so-called *D'Oench, Duhme* doctrine. This doctrine finds its genesis in the 1942 Supreme Court decision of *D'Oench, Duhme & Co. v. Federal Deposit Ins. Corp.*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942). There, the Court held that when a federally insured bank fails, borrowers from the bank are estopped from asserting oral agreements with the bank as a defense against collection efforts by the Federal Deposit Insurance Corporation (FDIC). *Id.* at 459–60, 62 S.Ct. at 680. Courts have extended this doctrine substantially over the past fifty years. For instance, the doctrine now protects private enterprises who purchase assets from institutions in federal receivership and "bridge banks" authorized by the FDIC to operate a failed bank—i.e. "assignees of the FDIC." *Porras v. Petroplex Sav. Ass'n*, 903 F.2d 379, 381 (5th Cir.1990) (quoting *Bell & Murphy & Assoc., Inc. v. Interfirst Bank Gateway, N.A.*, 894 F.2d 750, 754–55 (5th Cir.1990), *cert. denied*, 498 U.S. 895, 111 S.Ct. 244, 112 L.Ed.2d 203). The Fifth Circuit recognizes that "the doctrine has evolved to a rule that today is expansive and perhaps startling in its severity"—a veritable "dungeon of *Duhme.*" *Bowen v. Federal Deposit Ins. Corp.*, 915 F.2d 1013, 1015 (5th Cir.1990).

 Congress partially codified this common law doctrine at 12 U.S.C. § 1823(e).[4] This statutory version of the *D'Oench, Duhme* doctrine prevents borrowers from asserting agreements as the basis for claims or defenses against the FDIC unless such agreements are in writing, executed by the depository institution and the borrower, approved by the bank's board of directors, and made part of the bank's official records. 12 U.S.C. § 1823(e).[5]

---

**4.** There are two *D'Oench, Duhme* doctrines, one statutory and one found in the common law.

*Kilpatrick v. Riddle*, 907 F.2d 1523, 1526 n. 4 (5th Cir.1990).

**5.** 12 U.S.C. § 1823(e) provides:

Courts struggle to apply and differentiate the statutory and common law *D'Oench, Duhme* doctrines, often considering the two "in tandem, looking to the common law when construing the statute." *Beighley v. Federal Deposit Ins. Corp.*, 868 F.2d 776, 784 (5th Cir.1989). As Judge Lamberth of the United States District Court for the District of Columbia aptly put it, "[o]ver the years, the case law surrounding *D'Oench* and the statute (particularly § 1823(e)) has cross-pollinated such that it is very difficult to decide where the statute ends and *D'Oench* begins." *In Re NBW Commercial Paper Litigation*, 826 F.Supp. 1448, 1457 (D.D.C.1992). Fortunately, we need not attempt to parse or to delve into the interrelationship of the statutory and common law doctrines, as we find that neither of the doctrines are available, in a general sense, to the parties here urging their application. Instead, we need only keep in mind that "the aims of § 1823(e) and *D'Oench* are identical and § 1823(e) is a codification of *D'Oench* and its progeny, the reasoning applied in § 1823(e) cases is applicable to *D'Oench* cases." *Olney Sav. & Loan Ass'n v. Trinity Banc Sav. Ass'n*, 885 F.2d 266, 274 (5th Cir.1989).

■ Thus, a review of the purposes of the two doctrines is appropriate. In *Langley v. Federal Deposit Ins. Corp.*, the Supreme Court noted that the statutory doctrine has two purposes:

One purpose ... is to allow federal and state bank examiners to rely on a bank's records in evaluating the worth of the bank's assets.... Neither the FDIC nor state banking authorities would be able to make reliable evaluations if bank records contained seemingly unqualified notes that are in fact subject to undisclosed conditions.

A second purpose ... [is to] ensur[e] mature consideration of unusual loan transactions by senior bank officials, and prevent[ ] fraudulent insertion of new terms, with the collusion of bank employees, when a bank appears headed for failure.

484 U.S. 86, 91–92, 108 S.Ct. 396, 401, 98 L.Ed.2d 340 (1987). In essence, the doctrine "attempts to ensure that FDIC examiners can accurately assess the condition of a bank based on its books." *Bowen*, 915 F.2d at 1016.

The Fifth Circuit acknowledged the purposes undergirding *D'Oench, Duhme* when it extended the doctrine to protect subsequent purchasers of assets of a failed institution from a federal receiver and to FDIC-authorized "bridge banks." *Porras v. Petroplex Sav. Ass'n*, 903 F.2d 379, 381 (5th Cir.1990) (subsequent purchasers); *Bell & Murphy & Assocs. v. Interfirst Bank Gateway*, 894 F.2d 750, 754–55 (5th Cir.1990) ("bridge banks"). In *Porras*, the Fifth Circuit explained that

[a] primary duty of the FDIC and the FSLIC is to pay depositors of failed institutions. The preferred method of ensuring that depositors are paid is through the use of purchase and assumption agreements. Purchase and assumption agreements are preferred because they minimize the corporations' losses, expand the purchasing institutions' opportunities at low risk, and protect depositors. *D'Oench, Duhme* promotes purchase and assumption agreements by offering the purchaser protection from secret agreements that tend to affect adversely its rights in the instruments that it acquires. Extending *D'Oench, Duhme* to transferees of assets from the FSLIC, therefore, provides the FSLIC with greater opportunity to protect the failed institutions' assets.

903 F.2d at 380–81 (citations omitted).

Having set forth the background and purposes behind the companion *D'Oench,*

No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as a receiver of any insured depository institution, shall be valid against the Corporation unless such agreement—(1) is in writing, (2) was executed by the depository institution and any other person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution, (3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) has been, continuously, from the time of its execution, an official record of the depository institution.

*Duhme* doctrines; we now turn to analyzing the instant motions. Dollar maintains that all of Crowe's claims against him based on acts occurring before RTC placed People's into receivership are barred by the *D'Oench, Duhme* doctrines. If these pre-receivership RICO "predicate acts" are barred by *D'Oench, Duhme,* Dollar points out that only one alleged "predicate act" remains as a basis for the RICO causes of action. Because a single "predicate act" will not sustain a RICO claim, Dollar's logic would compel our dismissal of the RICO claims under Fed. R.Civ.P. 12(b)(6).

We short-circuit this logic because we find that the alleged pre-receivership acts are not barred under the *D'Oench, Duhme* doctrines. Dollar relies exclusively on a series of Texas United States District Court cases to support his position that *D'Oench, Duhme* protects former officers, directors and outside counsel of an insolvent institution. While we hesitate to challenge the opinions of other district courts within our circuit, we feel that a close examination of the precedent on which these opinions rely and in light of more persuasive and controlling case law to contrary, following these opinions would be in error and would violate the very purposes and intentions supporting the *D'Oench, Duhme* doctrines.

Dollar places a great deal of emphasis on *Whitehead v. Federal Deposit Ins. Corp.,* 1989 U.S.Dist. Lexis 17532 (N.D.Tex.1989). There, plaintiff sued two officers of MBank–Dallas for breach of contract, breach of duty of good faith and fair dealing, common law fraud and misrepresentation, interference with contractual obligations, and prima facie tort. *Id.* at *2. All of these claims revolved around alleged oral representations made by defendants acting in their official capacity as officers of MBank–Dallas. Relying on *RSR Properties, Inc. v. Federal Deposit Ins. Corp.,* 706 F.Supp. 524, 531 (W.D.Tex.1989), the court held that officers of the failed bank acting within their scope of employment were protected by *D'Oench, Duhme;* therefore, the court granted the individual defendants' motion to dismiss. *Whitehead,* 1989 U.S.Lexis 17532, at *2.

A close review of *RSR Properties* reveals that it should not be cited for the proposition that the *D'Oench, Duhme* may be extended to protect former officers of failed financial institutions. The *RSR Properties* plaintiffs sued the FDIC, an FDIC authorized "bridge bank" and several officers of a failed financial institution. Defendants moved for summary judgment on "several alternative legal basis [sic]." *RSR Properties,* 706 F.Supp. at 530. The court clearly set forth and analyzed these four separate grounds. First, the court found that *D'Oench, Duhme* "bars the assertion of affirmative claims for relief against the FDIC and its *successor* for alleged wrongful conduct by the failed bank." *Id.* at 531 (citing *Beighley v. Federal Deposit Ins. Corp.,* 676 F.Supp. 130 (N.D.Tex.1987) (emphasis added)). The court, therefore, found that "applicable federal law relating to the liquidation of the assets of an insolvent banking institution protects both the FDIC and the [bridge bank] from Plaintiffs claims." *Id.* at 533. The court clearly limited its holding under *D'Oench, Duhme* to plaintiffs' claims versus the FDIC and the successor "bridge bank."

Only in a separate section titled "Claims Against the Individual Defendants" does the court address the claims against the former officers of the failed bank. Nowhere in this section does the court mention *D'Oench, Duhme.* Instead, the court relies exclusively on the state court case of *Talmadge Tinsley Co., v. Kerr,* 541 S.W.2d 207, 209 (Tex.Civ. App.–Dallas 1976) for the proposition that in order to proceed against the former officers individually, plaintiff must prove that such defendants acted or made representations outside the scope of their employment. *RSR Properties,* 706 F.Supp. at 533. A review of *Talmadge Tinsley* reveals that the court there made its ruling based entirely on Texas' law of agency. *Talmadge Tinsley* had nothing to do with the application of the *D'Oench, Duhme* doctrine. The holding in *RSR Properties* pertaining to the individual defendants, therefore, should not be cited for anything beyond the fact that under Texas' law of agency, former bank officers may not be held individually accountable for acts made within the scope of their employment.

The inescapable conclusion from all of this is, quite simply, that the court in *Whitehead* misread *RSR Properties* and wrongly applied it in the *D'Oench, Duhme* context. Unfortunately, this error became compounded when the United States District Court for the Western District of Texas relied upon *Whitehead* in reaching its holding in *Hackfeld v. Hurren,* 167 B.R. 429 (W.D.Tex.1991), *aff'd without opinion,* 961 F.2d 213 (5th Cir.1992). The court in *Hackfeld* noted that the two page opinion in *"Whitehead* is particularly on point and . . . its reasoning persuasive." 167 B.R. at 434. The court thus followed *Whitehead* and found that the individual defendants before it, former officers of a failed bank, were protected by *D'Oench, Duhme. Id.* at 434.

We would be compelled, of course, to follow *Hackfeld*—as the Fifth Circuit affirmed without a written opinion—had the ruling rested solely on the logic of *Whitehead.* The district judge in *Hackfeld,* however, went on to grant the former officers' motions for summary judgment on "grounds independent of the *D'Oench, Duhme* doctrine." *Id.* at 435. Because we are confident that *Whitehead* (which *Hackfeld* followed) misapplied *RSR Properties* and *D'Oench, Duhme,* and in light of controlling Fifth Circuit and other more persuasive case law to the contrary, we cannot follow *Whitehead* and *Hackfeld.*

Foremost of the opinions contrary to *Whitehead* and *Hackfeld* is *Kilpatrick v. Riddle,* 907 F.2d 1523, (5th Cir.1990), *cert. denied,* 498 U.S. 1083, 111 S.Ct. 954, 112 L.Ed.2d 1042 (1991). There, plaintiff sued the FDIC and the officers of a failed bank for securities fraud. The court held that the *D'Oench, Duhme* doctrine cut off plaintiffs' claims against the FDIC. *Id.* at 1529. The court was careful to note, however, that "precluding this action [as to the FDIC] does not deprive the plaintiffs of protection under the federal securities laws. They may sue the individuals who actually defrauded them." *Id.* This repeated the court's earlier admonition that "the plaintiffs may, of course, pursue actions for securities fraud against the individuals involved." *Id.* at 1524.

Other courts have found that *D'Oench, Duhme,* while precluding defenses or claims against the FDIC, subsequent purchasers and "bridge banks," has no effect on plaintiffs' claims versus former officers of failed banks. Courts often cite *Federal Deposit Ins. Corp. v. Dixon* for the proposition that the recourse for those thwarted by *D'Oench, Duhme* "is against the individuals and entities who allegedly defrauded [them]." 681 F.Supp. 408, 414 (E.D.Mich.1988) (citing *Federal Deposit Ins. Co. v. O'Neil,* 809 F.2d 350, 354 (7th Cir.1987)). *See also Alarcon v. Williams,* 772 F.Supp. 334, 342 (E.D.Mich. 1991); *Bohm v. Forum Resorts, Inc.,* 762 F.Supp. 705, 711 (E.D.Mich.1991).

█ A review of the purposes and intents underlying the *D'Oench, Duhme* doctrines bolsters our position that the doctrines should not be extended to protect former officers, directors or other individuals associated with a failed bank. These doctrines attempt "to ensure that FDIC examiners can accurately assess the condition of a bank based on its books." *Bowen,* 915 F.2d at 1016. Moreover, *D'Oench, Duhme* fosters the "federal policy to protect [the FDIC] and the public funds which it administers against misrepresentations as to the securities or other assets in the portfolios of the banks which [it] insures or to which it makes loans." *D'Oench, Duhme,* 315 U.S. at 457, 62 S.Ct. at 679. Stretching the walls of the "dungeon of *Duhme* " to encompass potentially valid claims of malfeasance on the part of former officers, directors and outside counsel of failed financial institutions would further none of the purposes of the doctrines; allow, in some cases, the wrongful acts of former bank officials to go unchecked; and leave genuinely injured parties with no legal recourse with which to redress their harm. We find, therefore, that neither of the *D'Oench, Duhme* doctrines act as a bar to the alleged pre-receivership acts serving as RICO "predicate acts."

### B. *Claims Relating to Dollar's Involvement in the Smith/RTC Sale*

Dollar urges us to dismiss Crowe's claims against him allegedly arising from RTC's

sale of Eagle Bend to Smith.[6] In support of his assertion that there is an absence of any genuine dispute of material fact as to the viability of these claims, Dollar introduces his own affidavit. In paragraph 15, Dollar denies Crowe's allegations concerning his involvement in the Smith/RTC sale. Crowe fails to set forth any summary judgment material showing that there is a genuine issue for trial relating to Dollar's involvement in the Smith/RTC sale. Therefore, pursuant to Fed.R.Civ.P. 56(e), we dismiss Crowe's claims against Dollar arising from the Smith/RTC sale.[7]

### C. State Law Claims

Dollar asserts that Crowe's numerous state law claims should be dismissed on several grounds. We address these arguments below.

#### 1. Breach of Contract and Fiduciary Duties Claims

Dollar maintains that Crowe's state law breach of contract and fiduciary duties claims should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) because there was no general, contractual, or fiduciary duty between him and Crowe.[8]

■ Crowe's opposition fails to call our attention to any contract between him and Dollar, and we do not find any such contracts mentioned in the Complaint. Moreover, Louisiana law makes clear that agents such as Dollar who negotiate and enter into contracts on behalf of their principals are not individually liable in contract for actions taken within the scope of their authority. *See, e.g., Haskins v. Clary,* 338 So.2d 166, 168 (La.App. 2nd Cir.1976). Therefore, we grant Dollar's motion to dismiss Crowe's breach of contract claim.

Crowe's opposition does, however, challenge Dollar's motion as to the breach of fiduciary duty claim. Crowe supports this claim by citing to La.R.S. 6:1124, which provides that

> [n]o financial institution or officer or employee thereof shall be deemed or implied to be acting as a fiduciary, or have a fiduciary obligation or responsibility to its customers or to third parties other than shareholders of the institution, unless there is a written agency or trust agreement under which the financial institution specifically agrees to act and perform in the capacity of a fiduciary.

La.R.S. 6:1124. Crowe points to the partnership agreement between himself and Agrarian, a wholly owned subsidiary of People's, as sufficient to fulfill the writing requirement of La.R.S. 6:1124. In particular, paragraph 22 of the partnership agreement states that "[t]he relations of the PARTNERS shall be governed by the laws of the State of Louisiana, to the fullest extent allowed by the law." Louisiana law is clear on the point that partners owe fiduciary duties to each other. *See, e.g., Henley v. Haynes,* 376 So.2d 1030, 1031 (La.App. 1st Cir.1979).

■ Dollar refutes Crowe's stance that the partnership agreement satisfies La.R.S. 6:1124 by stating that "Dollar is not party to the agreement and did not sign the agreement *in any capacity.* Dollar cannot acquire fiduciary obligations through a document which he did not sign and to which he, as an individual, did not agree." Supplemental Mem. in Supp. of Mot. of Dollar to Dismiss and for Summ. J. at 15. Dollar offers no authority in support of this point and we find otherwise. La.R.S. 6:1124 does not require each and every "officer or employee" to sign the writing creating the fiduciary relationship; instead, the provision only calls for the existence of a written agreement wherein

6. Because we rule in Dollar's favor on this particular motion, we need not address his alternative position that Crowe's damages claim relating to the Smith/RTC sale should be limited to Crowe's expenses in preparing his bid submission to the RTC.

7. This grant of summary judgment on the claims arising from the Smith/RTC sale extends to Price & Noah, as they are liable only vicariously

through Dollar. We express no opinion, however, as to Crowe's claims against Malcolm Maddox relating to the Smith/RTC sale.

8. Dollar asserts that we should dismiss a negligence claim. The Complaint, however, does not mention a negligence cause of action. Accordingly, we need not address this aspect of Dollar's motion.

the financial institution agrees to take on fiduciary obligations. La.R.S. 6:1124.

■ Dollar sets forth a fall-back argument in support of his position that he owes no duties to Crowe. He claims that the Louisiana Supreme Court case of *Penalber v. Blount*, 550 So.2d 577 (La.1989) provides a basis for dismissal of Crowe's breach of contract and fiduciary duties claims to the extent the claims arise from Dollar's actions as counsel to People's, not as its Chief Executive Officer. *Penalber* holds that "an attorney does not generally owe a duty to his client's adversary." 550 So.2d at 582. Clearly, this holding is limited to an adversarial context. *Id.* at 578 n. 2. Dollar served as counsel to People's, the parent owner of Agrarian. Crowe and Agrarian were partners in Eagle Bend Development, owing each other fiduciary duties. Dollar's motion neglects to delineate where, when, or how Dollar might have properly acted in an adversarial context towards Crowe. Thus, we cannot find that *Penalber* is available as grounds to grant Dollar's partial motion to dismiss.

While we express no opinion as to the validity of Crowe's breach of fiduciary duty claim, we find that Dollar fails to carry his burden under Fed.R.Civ.P. 12(b)(6) to have this claim dismissed.

### 2. Fraud, Intentional Infliction of Emotional Distress, Tortious Interference with Contract Rights and Unfair Trade Practices Claims

■ Dollar contends that Crowe's fraud, intentional infliction of emotional distress, tortious interference with contract rights and unfair trade practices claims should be dismissed as prescribed pursuant Fed.R.Civ.P. 12(b)(6) or Fed.R.Civ.P. 56. Louisiana has a one year prescriptive period for actions in tort. La.Civ.Code art. 3492. Crowe does not allege any tortious conduct on the part of any of the defendants herein within the prescriptive period, nor does he set forth any reasons why prescription should be tolled. Indeed, Crowe's memoranda in opposition to the instant motions fail to offer any reason

why such claims should survive the motions to dismiss on the grounds of prescription. Therefore, we dismiss Crowe's these claims against the defendants herein.

■ Similarly, Dollar points out that Crowe's unfair trade practices claims should be barred by the one year peremptive limitations period. La.R.S. 51:1409(E). We find no alleged unfair trade practices during the year before institution of this lawsuit on December 2, 1992, and Crowe does not oppose the motions to dismiss on the grounds of prescription. Hence, we dismiss Crowe's unfair trade practices claims against the defendants herein.[9]

### III. Conclusion

Accordingly, the Motion to Dismiss Crowe's RICO claims on the basis that *D'Oench, Duhme* bars all pre-receivership acts as RICO "predicate acts," filed by Dollar, and adopted by reference by the McCrory defendants, Roche, Price & Noah, and the McLeod defendants is hereby **DENIED.**

The Motion for Summary Judgment as to the Smith/RTC sale filed by Dollar, and adopted by reference by Price & Noah and the McLeod defendants is hereby **GRANTED.**

The Motion to Dismiss plaintiffs' breach of contract claim filed by Dollar, and adopted by reference by the McCrory defendants, Roche, Price & Noah, and the McLeod defendants is hereby **GRANTED.**

The Motion to Dismiss plaintiffs' breach of fiduciary duty claim filed by Dollar, and adopted by reference by the McCrory defendants, Roche, Price & Noah, and the McLeod defendants is hereby **DENIED.**

The Motion to Dismiss and the alternative Motion for Summary Judgment attacking Crowe's fraud, intentional infliction of emotional distress, tortious interference with contract rights and unfair trade practices claims filed by Dollar, and adopted by reference by the McCrory defendants, Roche, Price &

---

**9.** Because we dismiss Crowe's unfair trade practices as prescribed, we need not address Dollar's contention that such claims should be dismissed based on the exemption found in La.R.S. 51:1406(1).

Noah, and the McLeod defendants is hereby **GRANTED.**

DONE AND SIGNED.